# CONNECTICUT MUTUAL LIFE INSURANCE COMPANY *v.* SPRATLEY.

## ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 188. Submitted January 8, 1899. — Decided January 30, 1899.

In a suit in a state court against a foreign corporation where no property of the corporation is within the State, and the judgment sought is a personal one, it is material to ascertain whether the corporation is doing

business within the State; and if so, the service of process must be upon some agent in the State so far representing it that he may properly be held in law its agent to receive such process in its behalf.

A foreign insurance company which has been doing business within a State through its agents does not cease to do business therein when it withdraws its agent and ceases to obtain or ask for new risks or obtain new policies, while, at the same time, its old policies continue in force, and the premiums thereon are paid by the policyholders to an agent residing in another State, who was once the agent in the State where the policyholders reside.

On the facts stated in the opinion of the court, it is held that the law implies, from the appointment and authority of the agent of the plaintiff in error, the power to receive in Tennessee service of process against the company.

If it appears that there is a law of the State in respect to the service of process upon foreign corporations, and that the character of an agency of a foreign corporation is such as to render it fair, reasonable and just to imply an authority on the part of the agent to receive service, the law will, and ought to, draw such an inference and imply such authority, and service under such circumstances and upon an agent of that character is sufficient.

When the legislature of Tennessee, under the act of March 22, 1875, permitted the plaintiff in error, a foreign corporation, to do business within the State, on appointing an agent therein upon whom process might be served, and when, in pursuance of such provisions the company entered the State and appointed the agent, no contract was thereby created which would prevent the State from thereafter passing another statute in regard to service of process, and making such statute applicable to all foreign corporations, already doing business within the State.

THE case is stated in the opinion.

*Mr. B. M. Estes,* with whom was *Mr. Francis Fentress* on the brief, for plaintiff in error.

*Mr. Thomas B. Turley* and *Mr. Luke E. Wright* for defendant in error.

MR. JUSTICE PECKHAM delivered the opinion of the court.

The plaintiff in error filed its bill against the defendant in error in the chancery court of Shelby County, Tennessee, for the purpose of enjoining her from taking any proceedings under a judgment by default which she had obtained in the State of Tennessee, against the corporation, upon certain policies of insurance, and also for the purpose of obtaining a

decree pronouncing the judgment void and releasing the corporation therefrom.

The ground set forth in the bill, and upon which the complainant sought to have the judgment against it set aside, was that the complainant was a non-resident of the state of Tennessee, had no office or agent there at the time the process was served, and was doing no business in the State, and the person upon whom the process in the action had been served in behalf of the corporation was not its representative in the State, and no process served upon him was in any way effectual to give jurisdiction to the state court over the corporation. The bill also alleged that the judgment, if enforced, would result in taking complainant's property without due process of law, and would violate the Fifth and Fourteenth Amendments of the Constitution of the United States.

The defendant in error herein appeared and answered the bill, and alleged that the judgment she had obtained was a valid and proper judgment, and she denied the allegation in the bill that complainant was doing no business in the State at the time of the service of process, and alleged on the contrary that it was then doing business therein. She asked that the preliminary injunction theretofore granted should be dissolved.

The court of chancery upon the trial gave judgment in favor of the complainant, and decreed that the preliminary injunction granted in the cause should be made perpetual. The defendant appealed to the Supreme Court of the State, where the decree of the court of chancery was reversed, the injunction dissolved, and a judgment granted the defendant in error on the bond executed by the company in obtaining the injunction, for the amount of the original judgment, with interest from its date, together with the costs of the suit for the injunction. The complainant thereupon brought the case here by writ of error.

In addition to the objection that the person upon whom process was served was not such a representative of the company that service of process upon him was sufficient to give the court jurisdiction, the company alleges that under the act of 1875, which will be referred to hereafter, the company

appointed an agent pursuant to its provisions, and that any act subsequently passed relating to the service of process upon any other than the person so appointed could not affect the company, because such act would impair the contract which it alleges was created between the State and the company when it appointed an agent, by its power of attorney, pursuant to the provisions of such act of 1875.

The material facts are as follows: The corporation is a life insurance company, incorporated under the laws of, and having its principal office in, the State of Connecticut. It did a life insurance business in the State of Tennessee from February 1, 1870, until July 1, 1894. On March 22, 1875, the State of Tennessee passed an act to regulate the business of life insurance in that State and by section 12 of the act it was enacted that a company desiring to transact business by any agent or agents in the State should file with the insurance commissioner a power of attorney authorizing the secretary of state to acknowledge service of process for and in behalf of such company at any and all times after a company had first complied with the laws of Tennessee and been regularly admitted, even though such company may subsequently have retired from the State or been excluded; and it was made the duty of the secretary of state, within five days after such service of process by any claimant, to forward by mail an exact copy of such notice to the company. Pursuant to that statute the company duly filed a power of attorney as required, and appointed therein the secretary of state to receive service of process, and that power of attorney the company never in terms altered or revoked.

In 1887 the legislature of Tennessee passed an act, approved March 29, 1887, c. 226, entitled "An act to subject foreign corporations to suit in this State." The first section of this act provided that any foreign corporation found doing business in the State should be subject to suit there, to the same extent that said corporations were by the laws of the State liable to be sued, so far as related to any transaction had in whole or in part within the State, or to any cause of action arising therein, but not otherwise.

The second section provided that any corporation that had any transaction with persons or concerning any property situated in the State, through any agency whatever acting for it within the State, should be held to be doing business within the meaning of the act.

The third and fourth sections of the act are set forth in full in the margin.[1]

The company continued to do business in the State after the passage of this act, and on the 12th day of December, 1889, it insured the life of Benjamin R. Spratley, the husband of the defendant in error, for the term of his life, in the sum

---

[1] SEC. 3. *Be it further enacted*, That process may be served upon any agent of said corporation· found within the county where the suit is brought, no matter what character of agent such person may be; and in the absence of such an agent, it shall be sufficient to serve the process upon any person, if found within the county where the suit is brought, who represented the corporation at the time the transaction out of which the suit arises took place, or if the agency through which the transaction was had be itself a corporation, then upon any agent of that corporation upon whom process might have been served if it were the defendant. The officer serving the process shall state the facts, upon whom issued, etc., in his return,·and service of process so made shall be as effectual as if a corporation of this state were sued, and the process had been served as required by law; but in order that defendant corporation may also have effectual notice, it shall be the duty of the clerk to immediately mail a copy of the process to the home office of the corporation by registered letter, the postage and fees for which shall be taxed as other costs. The clerk shall file with the papers in the cause a certificate of the fact of such mailing, and make a minute thereof upon the docket, and no judgment shall be taken in the case until thirty (30) days after the date of such mailing.

SEC. 4. *Be it further enacted*, That it shall be the duty of the plaintiff to lodge at the home office of the company, with any person found there, a written notice from him or his attorney, stating that such suit has been brought, accompanied by a copy of the process and the return of the officer thereon, of which fact affidavit shall be made by the person lodging the same, stating the facts and with whom the notice was lodged, or else the plaintiff or his attorney shall make an affidavit that he has been prevented from serving such notice by circumstances which should reasonably excuse giving it, which circumstances the affidavit of the plaintiff or his attorney shall particularly state; and no judgment shall be taken until one or the other of these affidavits shall be filed and the court be satisfied that the notice has been given the defendant, or that the excuse for not doing so be sufficient.

of $5000, for the benefit of his wife, the defendant in error, or, in case of her death before payment, to his children, etc. The company also insured the life of Mr. Spratley on the 25th day of February, 1893, in the sum of $3000, in favor of his wife and for her sole use and benefit, with other conditions not material here. These policies were issued through the solicitation and by the procurement of the agent of the company for the States of Tennessee and Kentucky, and who had headquarters at Louisville, Kentucky. He came to Memphis and solicited Mr. Spratley to take the policies, and the application for them was taken by such agent at Memphis. The defendant in error alleges in her answer that the premiums were paid thereon in Tennessee up to the death of Mr. Spratley in February, 1896, but that fact does not otherwise appear. It does appear that all premiums had been paid at the time of the death of Mr. Spratley.

On July 1, 1894, the company ceased issuing any new policies in the State of Tennessee, and withdrew its agents from the State, and on July 21, 1894, notified the state insurance commissioner to that effect. It had, however, a number of policies, other than those issued on the life of Mr. Spratley, outstanding in the State at the time it withdrew, (how many is not stated,) and it continued to receive the premiums on these policies through its former agent for that State, and to settle, by payment or otherwise, the claims upon policies in that State as they fell due.

The former agent resided in Louisville when he received payment of the premiums, and it does not appear that after July, 1894, he was in the State of Tennessee when any payment of premiums was made to him by Tennessee policyholders. He received these payments as agent of the company, and it recognized such payments as sufficient.

Mr. Spratley died in the city of Memphis, in the State of Tennessee, on the 28th of February, 1896, leaving his widow, the defendant in error, surviving him. The two policies were in force at the time of his death. The company, being notified of the death of Mr. Spratley, sent its agent to Memphis to act under its instructions in the investigation and adjust-

ment of the claim.  Mr. Chaffee was the agent employed, and
he had been employed in the service of the company since
the first day of July, 1887.   The writing under which he was
employed stated that the company employed him " For special
service in any matters which may be referred to you, with
instructions, during the pleasure of the directors of the com-
pany and under the direction of the executive officers; to
have your entire time and services, except upon leave of
absence ; to pay the necessary travelling and hotel expenses
incurred in the line of your duty, and to pay you for your
time and services at the rate of $2500 per annum ; this agree-
ment terminable on the part of the company at the pleasure
of the directors and on your part by thirty days' written
notice."

The company sent Mr. Chaffee specially to the State of
Tennessee for the purpose of investigating into the circum-
stances of the death of Mr. Spratley and into the merits of
the claim made by Mrs. Spratley, and while there he was
authorized by the company to compromise the claim made by
her upon terms stated in a telegram from the vice president
of the company.   While Mr. Chaffee was engaged in negotia-
tions with Mrs. Spratley and her brother in relation to her
claims, and after she had refused to accept the compromise
offered by him in behalf of the company, and on April 15,
1896, he was served, in Memphis, with process against the
corporation in an action upon the policies above mentioned.

The attorneys for the plaintiff also sent a notice addressed
to the president and directors of the company, together with
a copy of the process issued out of the Circuit Court of Shelby
County, which notice and copy of process were sent to Mr. Dun-
ham, an attorney at law in the city and county of Hartford, in
the State of Connecticut, who, on May 8, 1896, at Hartford,
served them upon the company by leaving them in the hands
of its vice president, and an affidavit of that fact was made
by Mr. Dunham, and filed at the time of the entry of judg-
ment by default in the clerk's office at Memphis.   A copy of
the writ was also sent by registered letter by John A. Strehl,
clerk of the court, addressed to the Connecticut Mutual Life

Insurance Company, Hartford, Connecticut, and an acknowledgment of the receipt of such registered letter, signed by William P. Green on behalf of the Connecticut Mutual Life Insurance Company, was also filed with the judgment.

On July 2, 1896, judgment by default was entered against the defendant, and the judgment recited the above facts in relation to the service of process on Mr. Chaffee, the sending of the registered letter from the clerk of the court, and the notice and copy of process to the attorney, Mr. Dunham, and his service thereof upon the vice president of the company at its office in Hartford, Connecticut. It recited also the fact that the defendant was doing business in Shelby County, Tennessee, but that it had no office or agency therein, and that it had wholly failed to make any appearance, and thereupon the default was entered and judgment went against the defendant for the sum of $8000, being the total amount due on the life insurance contracts or policies described in the declaration, and also for costs.

Upon these facts the question arises as to the validity of the judgment, to set aside which the company has filed this bill. Without considering, for the moment, the objection that there was a contract between the State and the company which could not be impaired, was the service of process upon Mr. Chaffee sufficient to give the court jurisdiction over the corporation?

When the process was served, the act of 1887, above mentioned, was in force.

The third and fourth sections of that act have already been set forth, and they provide that process may be served upon any agent of the corporation, found within the county where the suit is brought, no matter what character of agent such person may be. We are not called upon to decide upon the entire validity of this whole act. The Federal question with which we are now concerned is whether the court obtained jurisdiction to render judgment in the case against the company so that to enforce it would not be taking the property of the company without due process of law. Even though we might be unprepared to say that a service of process upon

"any agent," found within the county, as provided in the statute, would be sufficient in the case of a foreign corporation, the question for us to decide is whether upon the facts of this case the service of process upon the person named was a sufficient service to give jurisdiction to the court over this corporation. If it were, there was due process of law, whatever we might think of the other provisions of the act in relation to the service upon any agent of a corporation, no matter what character of agent the person might be. If the person upon whom process was served in this case was a proper agent of the company, it is immaterial whether the statute of the State also permits a service to be made on some other character of agent which we might not think sufficiently representative to give the court jurisdiction over the corporation. If the service be sufficient in this instance, the corporation could not herein raise the question whether it would be sufficient in some other and different case coming under the provision of the state statute.

In a suit where no property of a corporation is within the State, and the judgment sought is a personal one, it is a material inquiry to ascertain whether the foreign corporation is engaged in doing business within the State; *Goldey* v. *Morning News*, 156 U. S. 519 ; *Merchants' Manufacturing Co.* v. *Grand Trunk Railway Co.*, 13 Fed. Rep. 358 ; and if so, the service of process must be upon some agent so far representing the corporation in the State that he may properly be held in law an agent to receive such process in behalf of the corporation. An express authority to receive process is not always necessary.

We think the evidence in this case shows that the company was doing business within the State at the time of this service of process. From 1870 until 1894, it had done an active business throughout the State by its agents therein, and had issued policies of insurance upon the lives of citizens of the State. How many policies it had so issued does not appear. Its action in July, 1894, in assuming to withdraw from the State, was simply a recall of its agents doing business therein, the giving of a notice to the state insurance commissioner, and

a refusal to take any new risks or to issue any new policies within the State. Its outstanding policies were not affected thereby, and it continued to collect the premiums upon them and to pay the losses arising thereunder, and it was doing so at the time of the service of process upon its agent.

The corporation alleged in its bill filed in this suit that the defendant herein was taking garnishee proceedings against its policyholders in the State for the purpose of collecting, as far as possible, the amount of the judgment she had obtained against the corporation, and it gave in its bill the names of some thirteen of such policyholders against whom proceedings had been taken by this defendant. It cannot be said with truth, as we think, that an insurance company does no business within a State unless it have agents therein who are continuously seeking new risks and it is continuing to issue new policies upon such risks. Having succeeded in taking risks in the State through a number of years, it cannot be said to cease doing business therein when it ceases to obtain or ask for new risks or to issue new policies, while at the same time its old policies continue in force and the premiums thereon are continuously paid by the policyholders to an agent residing in another State, and who was once the agent in the State where the policyholders resided. This action on the part of the company constitutes doing business within the State, so far as is necessary, within the meaning of the law upon this subject. And this business was continuing at the time of the service of process on Mr. Chaffee in Memphis.

It is admitted that the person upon whom process was served was an agent of the company. Was he sufficiently representative in his character? He was sent into the State as such agent to investigate in regard to this very claim, and while there he was empowered to compromise it within certain stated terms, leaving him a certain discretion as to the amount. He was authorized to settle the claim for the amount of the reserve " or thereabouts." He did not leave his character as agent when he entered the State. On the contrary, it was as agent, and for the purpose of representing the company therein, that he entered the State, and as agent he was

seeking a compromise of the claim by the authority of the company, and therein representing it. Why was he not such an agent as it would be proper to serve process upon? He had been appointed an agent by the company; his whole time and services were given to the company under an appointment made years previously; he received a salary from the company not dependent upon any particular service at any particular time. The company having issued policies upon the life of an individual who had died, and a claim having been made for payment in accordance with the terms of those policies, the company clothed him with authority to go into the State and in its behalf investigate the facts surrounding the claim, and authority was given him to compromise it upon terms which left to him discretion to some extent as to the amount of payment. He was not a mere agent appointed for each particular case. He was employed generally, by the company, to act in its behalf in all cases of this kind and as directed by the company in each case. Entering the State with this authority, and acting in this capacity, the company itself doing business within the State, it seems to us that he sufficiently represented the company within the principle which calls for the service of process upon a person who is in reality sufficient of a representative to give the court jurisdiction over the company he represents. In view of all the facts, we think it a proper case in which the law would imply, from his appointment and authority, the power to receive service of process in the case which he was attending to.

Taken in connection with the further fact of sending (as provided for in the statute) a copy of the process and notice thereof by registered letter to the home office of the company, and also the personal service upon the company of a copy of the process and notice thereof at its home office, it must be admitted that one of the chief objects of all such kinds of service, namely, notice and knowledge on the part of the company of the commencement of suit against it, is certainly provided for. We do not intimate that mere knowledge or notice as thus provided would be sufficient without a service

on the agent in the State where suit was commenced, but we refer to it as a part of the facts in the case.

In *Lafayette Insurance Company* v. *French*, 18 How. 404, 407, it appeared that a statute of Ohio made provision for service of process on foreign insurance companies in suits founded upon contracts of insurance there made by them with citizens of that State. One of those provisions was that service of process on a resident agent of a foreign corporation should be as effectual as though the same was served upon the principal. In a suit commenced in Ohio against a foreign corporation by service upon its resident agent, the company objected to the validity of that service, and that question came before this court, and Mr. Justice Curtis, in delivering the opinion of the court, said:

" We find nothing in this provision either unreasonable in itself or in conflict with any principle of public law. It cannot be deemed unreasonable that the State of Ohio should endeavor to secure to its citizens a remedy, in their domestic forum, upon this important class of contracts made and to be performed within that State, and fully subject to its laws; nor that proper means should be used to compel foreign corporations, transacting this business of insurance within the State, for their benefit and profit, to answer there for the breach of their contracts of insurance there made and to be performed. Nor do we think the means adopted to effect this object are open to the objection that it is an attempt improperly to extend the jurisdiction of the State beyond its own limits to a person in another State. Process can be served on a corporation only by making service thereof on some one or more of its agents. The law may, and ordinarily does, designate the agent or officer on whom process is to be served. For the purpose of receiving such service, and being bound by it, the corporation is identified with such agent or officer. The corporate power to receive and act on such service, so far as to make it known to the corporation, is thus vested in such officer or agent. Now, when this corporation sent its agent into Ohio, with authority to make contracts of insurance there, the corporation must be taken to assent to the condition upon which alone such busi-

ness could be there transacted by them; that condition being, that an agent, to make contracts, should also be the agent of the corporation to receive service of process in suits on such contracts; and, in legal contemplation, the appointment of such an agent clothed him with power to receive notice, for and on behalf of the corporation, as effectually as if he were designated in the charter as the officer on whom process was to be served; or, as if he had received from the president and directors a power of attorney to that effect. The process was served within the limits and jurisdiction of Ohio, upon a person qualified by law to represent the corporation there in respect to such service; and notice to him was notice to the corporation which he there represented, and for whom he was empowered to take notice."

The act did not provide for an express consent to receive such service, on the part of the company. The consent was implied because of the company entering the State and doing business therein subject to the provisions of the act.

It is true that in the above case the person upon whom service of process was made is stated to have been a resident agent of the company; but the mere fact of residence is not material, (other things being sufficient,) provided he was in the State representing the company and clothed with power as an agent of the company to so represent it. His agency might be sufficient in such event, although he was not a resident of the State. It is also true that the agent in that case was an agent with power to make contracts of insurance in behalf of the corporation in that State, and from that fact in connection with the statute, the court inferred the further fact of an implied power to receive service of process in behalf of the corporation. The agent had not, so far as the case shows, received any express authority from the company to receive service of process. The court does not hold nor is it intimated that none but an agent who has authority to make contracts of insurance in behalf of the company could be held to represent it for the purpose of service of process upon it. It is a question simply whether a power to receive service of process can reasonably and fairly be implied from the kind and char-

acter of agent employed.   And while the court held that an agent with power to contract was, in legal contemplation, clothed with power to receive notice for and on behalf of the corporation as effectually as if he were designated in the charter as the officer upon whom process was to be served, we think it is not an unnatural or an improper inference, from the facts in the case at bar, to infer a power on the part of this agent, thus sent into the State by the company, to receive notice on its behalf in the same manner and to the same extent that the agent in the case cited was assumed to have.   In such case it is not material that the officers of the corporation deny that the agent was expressly given such power, or assert that it was withheld from him.   The question turns upon the character of the agent, whether he is such that the law will imply the power and impute the authority to him, and if he be that kind of an agent, the implication will be made notwithstanding a denial of authority on the part of the other officers of the corporation.

This case is unlike that of *St. Clair* v. *Cox*, 106 U. S. 350. There the record of the judgment, which was held to have been properly excluded, did not (and there is no evidence which did) show that the corporation was doing business in the State at the time of the service of process on the person said to be its agent.   Nor did it appear that the person upon whom the process was served bore such relations to the corporation as would justify the service upon him as its agent.   In the course of the opinion in that case, Mr. Justice Field, speaking for the court, said :

" It is sufficient to observe that we are of opinion that when service is made within the State upon an agent of a foreign corporation, it is essential, in order to support the jurisdiction of the court to render a personal judgment, that it should appear somewhere in the record — either in the application for the writ, or accompanying its service, or in the pleadings or in the finding of the court — that the corporation was engaged in business in the State.   The transaction of business by the corporation in the State, general or special, appearing, and a certificate of service of process by the proper officer

on a person who is its agent there, would, in our opinion, be sufficient *prima facie* evidence that the agent represented the company in the business. It would then be open, when the record is offered as evidence in another State, to show that the agent stood in no representative character to the company, that his duties were limited to those of a subordinate employé, or to a particular transaction, or that his agency had ceased when the matter in suit arose."

Here we have the essentials named in the above extract from the opinion of the court in *St. Clair* v. *Cox*. We have a foreign corporation doing business in the State of Tennessee. We have its agent present within the State, representing it by its authority in regard to the very claim in dispute, and with authority to compromise it within certain limits, and his general authority not limited to a particular transaction. On the contrary, as seen from his written appointment, his agency for the company was a continuous one, and had been such since 1887, although, of course, his agency was limited to a certain department of the business of the corporation.

The case does not hold that a foreign corporation cannot be sued in any State unless it be doing business there and has appointed an agent expressly that process might be served upon him for it. Speaking of the service of process upon an agent, the learned justice thus continued:

"In the State where a corporation is formed, it is not difficult to ascertain who are authorized to represent and act for it. Its charter or the statutes of the State will indicate in whose hands the control and management of its affairs are placed. Directors are readily found, as also the officers appointed by them to manage its business. But the moment the boundary of the State is passed difficulties arise; it is not so easy to determine who represents the corporation there, and under what circumstances service on them will bind it."

This language does not confine the service to an agent who has been expressly authorized to receive service of process upon him in behalf of the foreign corporation. If that were true, it would be easy enough to determine whether the person represented the corporation, as unless he had been so

authorized he would not be its agent in that matter. In the absence of any express authority, the question depends upon a review of the surrounding facts and upon the inferences which the court might properly draw from them. If it appear that there is a law of the State in respect to the service of process on foreign corporations and that the character of the agency is such as to render it fair, reasonable and just to imply an authority on the part of the agent to receive service, the law will and ought to draw such an inference and to imply such authority, and service under such circumstances and upon an agent of that character would be sufficient.

It was held in *Pennoyer* v. *Neff*, 95 U. S. 714, that a service by publication in an action *in personam* against an individual, where the defendant was a non-resident and had no property within the State, and the suit was brought simply to determine his personal rights and obligations, was ineffectual for any purpose. The case has no bearing upon the question here presented.

In *Mexican Central Railway* v. *Pinkney*, 149 U. S. 194, it was held that the person upon whom process was served in the State of Texas was not a "local agent" within the meaning of that term as contained in the Texas statute. It was also held that the special appearance of the company for the purpose of objecting that the service of process was not good did not, in the Federal courts, confer jurisdiction as in case of a general appearance. There is nothing in the case affecting this question.

In *Maxwell* v. *Atchison, Texas &c. Railroad*, 34 Fed. Rep. 286, the opinion in which was delivered by Judge Brown, United States District Judge of Michigan, now one of the Justices of this court, the decision was placed upon the ground that the business which the defendant carried on in Michigan was not of such a character as to make it amenable to suits within that jurisdiction, especially where the cause of action in the case arose within the State of Kansas, and the court also held that the individual upon whom the process was served was not an officer or managing agent of the railroad company within the meaning of the act of the legislature, nor was

he even a ticket agent of the company; that he was a mere runner, and that service of process upon him for a cause of action arising in Kansas gave no jurisdiction to the court.

In *United States* v. *American Bell Telephone Co.*, 29 Fed. Rep. 17, Judge Jackson stated the three conditions necessary to give a court jurisdiction *in personam* over a foreign corporation: First, it must appear that the corporation was carrying on its business in the State where process was served on its agent; second, that the business was transacted or managed by some agent or officer appointed by or representing the corporation in such State; third, the existence of some local law making such corporation amenable to suit there as a condition, express or implied, of doing business in the State.

In this case the company was doing business in the State. The agent was in the State under the authority and by the appointment of the company. He was authorized to inquire into and compromise the particular matters in dispute between the corporation and the policyholder, and he was no mere special employé engaged by the company for this particular purpose. And there was a local law, that of 1887, providing for service. It has been recently held in this court that as to a Circuit Court of the United States, where a corporation is doing business in a State other than the one of its incorporation, service may sometimes be made upon its regularly appointed agents there, even in the absence of a state statute conferring such authority. *Barrow Steamship Co.* v. *Kane*, 170 U. S. 100.

Although the legislature, by the act of 1875, provided for service of process upon a particular person, (the secretary of state,) in behalf of a foreign corporation, and the company had, pursuant to the provisions of the act, duly appointed that officer its agent to receive process for it, nevertheless the legislature provided, by law in 1887, for service upon other agents, and the company continued thereafter to do business in the State. Continuing to do business, the company impliedly assented to the terms of that statute, at least to the extent of consenting to the service of process upon an

agent so far representative in character that the law would imply authority on his part to receive such service within the State. *Merchants' Manufacturing Co.* v. *Grand Trunk Railway*, 13 Fed. Rep. 358, 359. When the service of which plaintiff in error complains was made, the act of 1875 had been repealed by chapter 160 of the laws of 1895, and the company had never appointed an agent under chapter 166 of the laws of that year. There was, therefore, no one upon whom process could be served in behalf of the company, excepting under the act of 1887, unless the plaintiff in error be right in the claim that, by appointing the secretary of state its agent to receive process under the act of 1875, a contract was created, and the secretary of state remained such agent, notwithstanding subsequent statutes regulating the subject, or even repealing the act. We will refer to that claim hereafter. If by the statute of the State provision were made for the appointment of an agent by the company, upon whom process might be served, and the company had appointed such an agent, and there was no other statute authorizing service of process upon an agent of the company other than the one. so appointed, we do not say that service upon any other agent of the company would be good. This is not such a case, and the question is not here open for discussion.

A vast mass of business is now done throughout the country by corporations which are chartered by States other than those in which they are transacting part of their business, and justice requires that some fair and reasonable means should exist for bringing such corporations within the jurisdiction of the courts of the State where the business was done, out of which the dispute arises.

It was well said in *Railroad Company* v. *Harris*, 12 Wall. 65, 83, by Mr. Justice Swayne, in speaking for the court, in regard to service on an agent, that " When this suit was commenced, if the theory maintained by the counsel for the plaintiff in error be correct, however large or small the cause of action, and whether it were a proper one for legal or equitable cognizance, there could be no legal redress short of the seat of the company in another State. In many instances the

cost of the remedy would have largely exceeded the value of its fruits. In suits local in their character, both at law and in equity, there could be no relief. The result would be, to a large extent, immunity from all legal responsibility." The court in view of these facts was of opinion that Congress intended no such result.

In holding the service of process upon this particular agent sufficient in this instance and so far as the character of the agent is concerned, we do not, as we have already intimated, hold that service upon any agent mentioned in the act of 1887 would be good. That question is not before us.

Upon the question relative to the alleged creation of a contract between the State and the company, by the appointment of the secretary of state as its agent under the act of 1875, to receive process for it, we have no doubt.

The act of 1875 stated the terms, upon compliance with which a foreign corporation should be permitted to do business within the State of Tennessee. There was however no contract that those conditions should never be altered, and when pursuant to the provisions of the act of 1875 this power of attorney was given by the corporation, the State did not thereby contract that during all of the period within which the company might do business within that State no alteration or modification should be made regarding the conditions as to the service of process upon the company. When therefore in 1887 the legislature passed another act and therein provided for the service of process, no contract between the State and the corporation was violated thereby, or any of its obligations in anywise impaired, for the reason that no contract had ever existed. Instead of a contract, it was a mere license given by the State to a foreign corporation to do business within its limits upon complying with the rules and regulations provided for by law. That law the State was entirely competent to change at any time by a subsequent statute without being amenable to the charge that such subsequent statute impaired the obligation of a contract between the State and the foreign corporation doing business within its borders under the former act.

Statutes of this kind reflect and execute the general policy of the State upon matters of public interest, and each subsequent legislature has equal power to legislate upon the same subject. The legislature has power at any time to repeal or modify the act granting such permission, making proper provision when necessary in regard to the rights of property of the company already acquired, and protecting such rights from any illegal interference or injury. *Douglas* v. *Kentucky*, 168 U. S. 488. The cases showing the right of a State to grant or refuse permission to a foreign corporation of this kind to do business within its limits are collected in *Hooper* v. *California*, 155 U. S. 648, 652.

Having the right to impose such terms as it may see fit upon a corporation of this kind as a condition upon which it will permit the corporation to do business within its borders, the State is not thereafter and perpetually confined to those conditions which it made at the time that a foreign corporation may have availed itself of the right given by the State, but it may alter them at its pleasure. In all such cases there can be no contract springing from a compliance with the terms of the act, and no irrepealable law, because they are what is termed "governmental subjects," and hence within the category which permits the legislature of a State to legislate upon those subjects from time to time as the public interests may seem to it to require.

As these statutes involve public interests, legislation regarding them are necessarily public laws, and as stated in *Newton* v. *Commissioners*, 100 U. S. 548, 559; " Every succeeding legislature possesses the same jurisdiction and power with respect to them as its predecessors. The latter have the same power of repeal and modification which the former had of enactment, neither more nor less. All occupy, in this respect, a footing of perfect equality. This must necessarily be so in the nature of things. It is vital to the public welfare that each one should be able at all times to do whatever the varying circumstances and present exigencies touching the subject involved may require. A different result would be fraught with evil."

The same principle is found in the following cases: *Fertilizing Company* v. *Hyde Park*, 97 U. S. 659; *Butchers' Union Company* v. *Crescent City*, 111 U. S. 746; *Boyd* v. *Alabama,* 94 U. S. 645; *Douglas* v. *Kentucky*, 168 U. S. 488.

When the legislature of Tennessee therefore permitted the company to do business within its State on appointing an agent therein upon whom process might be served, and when in pursuance of such provisions the company entered the State and appointed the agent, no contract was thereby created which would prevent the State from thereafter passing another statute in regard to service of process, and making such statute applicable to a company already doing business in the State. In other words, no contract was created by the fact that the company availed itself of the permission to do business within the State under the provisions of the act of 1875.

Upon the case as presented in this record, we are of opinion that the service upon the person in question was a good service in behalf of the corporation. The judgment of the Supreme Court of Tennessee is therefore

*Affirmed.*

Mr. Justice Harlan did not sit in and took no part in the decision of this case.