### HUSSEY TIE CO. v. KNICKERBOCKER INS. CO.

Circuit Court of Appeals, Eighth Circuit.
July 28, 1927.

No. 7747.

Insurance ⚖=16—Foreign insurer held not "doing business" in state, giving state court jurisdiction of action on contract insuring property in another state (Rev. St. Mo. 1919, § 6312).

Foreign company, not authorized to do business in the state and having no agent there, which had not insured any property in the state nor solicited such insurance, *held* not "doing business" in the state, and hence Rev. St. Mo. 1919, § 6312, providing that service of summons on a foreign insurance company not authorized to do business in the state shall be valid, if made in the state on any person who shall solicit insurance, or make any contract, or collect or receive any premium, or settle or pay any loss, on behalf of such company, was not effective to give a court of the state jurisdiction in an action against such corporation on a contract of insurance of property in another state.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Action at law by the Hussey Tie Company against the Knickerbocker Insurance Company. To review a judgment quashing the service and dismissing the action for want of jurisdiction, plaintiff brings error. Affirmed.

Walter R. Mayne, of St. Louis, Mo. (John H. Holliday, C. P. Fordyce, and Fordyce, Holliday & White, all of St. Louis, Mo., on the brief), for plaintiff in error.

Rhodes E. Cave, of St. Louis, Mo. (Henry Davis, Thomas S. McPheeters, and Bryan, Williams & Cave, all of St. Louis, Mo., on the brief), for defendant in error.

Before KENYON, Circuit Judge, and MOLYNEAUX and JOHN B. SANBORN, District Judges.

JOHN B. SANBORN, District Judge. The plaintiff in error, plaintiff in the court below, a Delaware corporation doing business in Missouri, brought suit against the defendant in error, defendant in the court below, upon its policy of fire insurance, in the circuit court of the city of St. Louis. Service of summons was made on January 26, 1926, upon "Lawton, Byrne & Bruner Insurance Agency Company," a corporation, and upon Charles H. Morrill, of "N. H. Markham & Co.," a copartnership, who, in the sheriff's return, are designated as agents of the defendant. There was also service of summons upon the superintendent of insurance of the state of Missouri. The case was removed by the defendant, a New York corporation, to the District Court of the United States for the Eastern District of Missouri. Thereupon the defendant moved to quash the service of process, the motion was granted, and the suit dismissed for want of jurisdiction. The plaintiff is here upon writ of error.

The sole question for review relates to the validity of the service of process upon the defendant. The defendant was not licensed in Missouri. It had never issued a policy covering property in that state; it had no agents there; it had appointed no one to accept service of process. None of the members of the firm of W. H. Markham & Co., a copartnership engaged in the business of soliciting insurance in the city of St. Louis, had any authority from the defendant to solicit insurance on its behalf, had never solicited insurance as its agent on property in the state of Missouri, and had never written insurance for it on property in that state. The firm had placed, with agents of the insurance company in states other than Missouri, insurance on property in other states, the policies being issued in states other than Missouri, and had collected premiums on such insurance, but had no authority to write, accept, or solicit insurance on behalf of the company. During the period of approximately five years prior to November 1, 1926, W. H. Markham & Co. had placed approximately 57 policies with the defendant company covering outside risks, the total premiums on which were about $14,213.92. The premiums were accounted for to Markham & Co. and paid in the usual course of business. The insurance was only placed upon orders for insurance at locations where Markham & Co. had no authority to write, and the insurance was placed either through New York or some other branch office of the insurance company. Policies were delivered through Markham & Co., and Markham & Co. would place upon them gummed labels containing their name and place of business, before delivery to the insured, as a matter of office practice and routine, and with no authority from the insurance company so to do. It was shown that substantially the same situation existed as to Lawton-Byrne-Bruner Insurance Agency Company, although the number of policies placed by it in the defendant insurance company and the amount of premiums received therefor are not shown. The affidavit of Mr. Reynolds, secretary of the insurance company, was to the effect that the company had never at any time done any business in the state of Missouri, and never authorized any one to solicit insurance, to receive or collect premiums, or to settle losses in that state.

Samuel C. Clubb was engaged in the business of soliciting insurance in the city of St. Louis. He solicited Mr. D. B. Hussey, president of the plaintiff, and secured from him an order for insurance on property known as the Busby Hotel, located at McAlester, Okl. He transmitted this order to Markham & Co. in St. Louis, with whom he placed all of his insurance, without designating any company in which it was to be written. Markham & Co. sent the order or application to the Central Insurance Agency at New York, who wrote a policy in the defendant company and sent it to Markham & Co., who placed upon it their gummed label and gave it to Clubb, who put his name upon it on the typewriter and then delivered it to Mr. Hussey. Markham & Co. sent the bill for the premium to the plaintiff on the usual form of statement, and paid Clubb his commission. The bill, which was stamped "Paid," was upon a bill head of W. H. Markham & Co., and showed the number of the policy, the name of the company, the property insured, the amount of insurance, and the premium. Mr. Hussey sent his check for the premium to Markham & Co., made payable to them. Attached to the policy, as a rider, was a standard use and occupancy form adapted to use in "Ill., Kans., Ky., Mo., Neb., No. Dak., Ohio, Okl., Tenn., Colo., Wyo., New Mex." At the bottom of the rider appeared the following words: "Attached to and forming part of policy No. 192313, Knickerbocker Insurance Company, issued at its W. H. Markham & Co. Agency. [Signed] Central Fire Agency, Inc., General Agent, by A. F. Haskell, Agent." It is apparent that Clubb was an insurance solicitor or broker, not engaged in writing contracts of insurance, but in placing insurance. Markham & Co., in placing insurance on risks outside of the state of Missouri, were also brokers. They had no authority to write policies on property in Oklahoma. Clubb, when he got the order for insurance from Hussey on the Oklahoma hotel, brokered it with Markham & Co. They were obliged to broker it with some agency representing a company either authorized to do or doing business in Oklahoma. They transmitted the order to the Central Insurance Agency of New York, general agents of the defendant, who wrote the policy and sent it to them. They, for advertising purposes, put their label on the policy, delivered it to Clubb, who, for the same reason, put his name on it. Markham & Co. billed Hussey for the premium, paid Clubb his commission, and undoubtedly accounted to the Central Agency of New York for the balance, less their commission. The record is silent as to whether Markham & Co. received a commission upon this insurance, and does not show whether the defendant company or the Central Agency charged the

amount of the premium to the insured or direct to Markham & Co. It is more probable that the insurance company looked to the Central Agency, who looked to Markham & Co., for payment of the premium.

The question of the validity of the service of the summons on the superintendent of insurance is not argued, and so waived. The plaintiff stands upon the service made on Markham & Co. and on the Lawton-Byrne-Bruner Insurance Agency Company. The statute of Missouri upon which the plaintiff relies is Revised Statutes Mo. 1919, § 6312, which reads as follows:

"Service of summons in any action against an insurance company, not incorporated under and by virtue of the laws of this state, and not authorized to do business in this state by the superintendent of insurance, shall, in addition to the mode prescribed in section 6310, be valid and legal and of the same force and effect as personal service on a private individual, if made by delivering a copy of the summons and complaint to any person within this state who shall solicit insurance on behalf of any such insurance corporation, or make any contract of insurance, or collect or receive any premium for insurance, or 'who adjusts or settles a loss or pays the same for such insurance corporation, or in any manner aids or assists in doing either."

While it is somewhat aside from the question here involved, it may not be inappropriate to say that the various states of the Union have had great difficulty in making their laws taxing and regulating foreign insurance companies doing business within their borders effective. State insurance laws relating to foreign insurers are enacted to make those doing business in the state pay a just proportion of the taxes, to protect the citizens of the state from dishonest and irresponsible insurers, and from unfair and fraudulent contracts of insurance, and to enable those who contract with such insurers to sue them in courts located within the state. The states not only desire to protect their own citizens, but they naturally have an interest in seeing that companies domiciled within the state and those coming in and qualifying to do business under their laws shall be at no greater disadvantage, so far as the burden of taxes, license fees, and litigation are concerned, than other companies writing insurance on lives or property within their borders. Each state is primarily interested in insurance upon lives and property within the state, and most of the insurance codes contain the provision that such contracts shall be deemed to be made in the state. Taxes are assessed upon premiums received from business covering lives and property in the state.

In this case, however, the statute of Missouri referred to is not limited by its terms to companies writing contracts on lives and property in Missouri, but is broad enough to cover all foreign companies, regardless of where the risks written by them are located. The question is whether the statute was effective to confer jurisdiction upn the court.

In United States v. American Bell Telephone Co. (C. C.) 29 F. 17, 35, quoted with approval in Connecticut Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, 618, 19 S. Ct. 308, 314 (43 L. Ed. 569) Judge Jackson stated the three conditions necessary to give a court jurisdiction in personam over a foreign corporation, as follows:

"(1) It must appear as a matter of fact that the corporation is carrying on its business in such foreign state or district; (2) that such business is transacted or managed by some agent or officer appointed by and representing the corporation in such state; and (3) the existence of some local law making such corporation, or foreign corporations generally, amenable to suit there as a condition, express or implied, of doing business in the state."

Mr. Justice Brandeis, in Philadelphia & Reading Railway Co. v. McKibbin, 243 U. S. 264, 265, 37 S. Ct. 280, 61 L. Ed. 710, said:

"A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there. And even if it is doing business within the state the process will be valid only if served upon some authorized agent. St. Louis Southwestern Ry. Co. v. Alexander, 227 U. S. 218, 226 [33 S. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77]. Whether the corporation was doing business within the state, and whether the person served was an authorized agent, are questions vital to the jurisdiction of the court. A decision of the lower court on either question, if duly challenged, is subject to review in this court; and the review extends to findings of fact as well as to conclusions of law."

On the question as to when a foreign corporation is doing business within a district in such a sense as to be subject to suit, the Supreme Court has said:

"This court has decided each case of this character upon the facts brought before it and has laid down no all-embracing rule by which it may be determined what constitutes

the doing of business by a foreign corporation in such manner as to subject it to a given jurisdiction. In a general way it may be said that the business must be such in character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and laws of the district in which it is served and in which it is bound to appear when a proper agent has been served with process. Lafayette Ins. Co. v. French, supra [18 How. 404] page 407 [15 L. Ed. 451]; Green v. Chicago, Burlington & Quincy Ry. Co., supra [205 U. S. 530] page 532 [27 S. Ct. 595, 51 L. Ed. 916]." St. Louis Southwestern Ry. Co. v. Alexander, 227 U. S. 218, 227, 33 S. Ct. 245, 247 (57 L. Ed. 486, Ann. Cas. 1915B, 77).

The court below determined that the attempted service was made upon men who were mere brokers, and who "were not and are not and never have been agents of the defendant insurance company," but who had collected premiums. He also determined that it was not doing business in the state in such sense as to subject it to suit therein.

The plaintiff, in contending that the court was wrong in his views, relies largely upon the authority of Commercial Mutual Acc. Co. v. Davis, 213 U. S. 245, 29 S. Ct. 445, 53 L. Ed. 782, Pennsylvania Lumbermen's Ins. Co. v. Meyer, 197 U. S. 407, 25 S. Ct. 483, 49 L. Ed. 810, Connecticut Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, 19 S. Ct. 308, 43 L. Ed. 569, and International Harvester Co. v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479.

In Connecticut Mutual Life Ins. Co. v. Spratley, supra, the facts were briefly these: The insurance company had been engaged in writing insurance in Tennessee from 1870 to 1894, when it withdrew from the state. In 1889, it insured Benjamin R. Spratley, a resident of Memphis, and again insured him in 1893. The applications were taken in Tennessee. Mr. Spratley died in 1896. The company sent a duly authorized agent to Memphis to adjust the death loss. He was served with process while there in an action upon the policies. The laws of Tennessee provided for service of process upon "any agent" of the corporation. The insurance company had other policies in the state upon which it was collecting premiums and paying losses. The court held that, under the facts of that case, the company was doing business and the service was valid. It will be noted that the company was collecting premiums and paying losses on policies written on lives in that state, and that service was had upon a duly authorized agent presently engaged in

the business of adjusting the loss under one of them.

In Pennsylvania Lumbermen's Insurance Co. v. Meyer, supra, the risks written were within the state of New York, where the suit was brought, the company was clearly engaged in business there, and service was upon a director resident there.

In Commercial Mutual Accident Co. v. Davis, supra, the same statute of Missouri involved in this case was called into question. The insurer, a Pennsylvania corporation, had issued a life policy to A. F. Davis. He died January 4, 1907. On January 14th and 15th, Dr. Mason, of Chicago, went to Fayette, Mo., the home of Mrs. Davis, the beneficiary, and there made an investigation of the cause of death on behalf of the company, and demanded an inspection of the body, which was refused. Mrs. Davis by letter notified the company to send some one to examine the body and some agent with authority to settle the claim. Dr. Mason was again sent to Fayette, with a letter containing such authority. The court held that the company must be presumed to have acted with knowledge of the statute which we have quoted and which was in effect at that time; that it was competent for the state, keeping within lawful bounds, to designate the agent upon whom process might be served, and so to say that an agent with authority to adjust losses should be competent to represent the company for service of process; that when the company sent Dr. Mason into the state, authorized to adjust the loss, he was presumed to represent the company for the purpose of service. The court said (page 255 [29 S. Ct. 448]):

"We think the state did not exceed its power and did no injustice to the corporation by requiring that when it clothed an agent with authority to adjust or settle the loss, such agent should be competent to receive notice, for the company, of an action concerning the same."

The court also said:

"Was the defendant doing business in the state of Missouri? The record discloses, and the court has found, that it had other insurance policies outstanding in the state of Missouri. Upon these policies undoubtedly premiums were paid, and it was the right of the company to investigate losses thereunder, to have an examination of the body of the deceased in proper cases, and to do whatever might be necessary to an adjustment or payment of any loss. The record shows that the company sent Dr. Mason to Fayette to investigate the loss sued for in this case, and later, and at the time of the service of the

process, Mason was in Missouri with full authority to settle the loss in controversy."

That case was similar to Connecticut Mutual Life Ins. Co. v. Spratley, supra. It involved a company with outstanding policies on lives in a state, and service upon an authorized agent sent into that state to adjust a loss on such a policy.

The case of International Harvester Co. v. Kentucky, supra, presents a situation where that company attempted to continue its business in Kentucky without subjecting itself to its laws, by withdrawing the authority of its agents to make Kentucky contracts or settle or adjust claims or to bind the company in any way in the state of Kentucky. On the question as to whether the company was doing business in Kentucky, this statement was made by the court (page 585 [34 S. Ct. 946]):

"Here was a continuous course of business in the solicitation of orders which were sent to another state and in response to which the machines of the Harvester Company were delivered within the state of Kentucky. This was a course of business, not a single transaction. The agents not only solicited such orders in Kentucky, but might there receive payment in money, checks, or drafts. They might take notes of customers, which notes were made payable, and doubtless were collected, at any bank in Kentucky. This course of conduct of authorized agents within the state in our judgment constituted a doing of business there in such wise that the Harvester Company might be fairly said to have been there, doing business, and amenable to the process of the courts of the state."

The Supreme Court stated that the question presented was a close one (page 585 [34 S. Ct. 946]). That case is clearly distinguishable from this.

Much language can be found in the numerous decisions which would lend aid or comfort to either side, but it is important to keep in mind that "each case must depend upon its own facts, and their consideration must show that * * * the corporation is actually doing business within the state" before a personal judgment can be rendered against it. International Harvester Co. v. Kentucky, supra.

The case of Minnesota Commercial Men's Association v. Benn, 261 U. S. 140, 43 S. Ct. 293, 67 L. Ed. 573, bears many analogies to this case. The association was domiciled in Minnesota, with its headquarters at Minneapolis, and was not licensed in any other state, and maintained an office only in Minneapolis. Assessments and dues were payable at the home office. New members were procured by advertisement and the solicitation of older ones. The latter were urged to furnish lists of prospects and to get new members, but no member had authority to bind the corporation. Soliciting members received no compensation, but occasional premiums or prizes. No paid solicitors or agents were employed. Losses were settled by checks on Minneapolis banks mailed from the home office. Proofs of loss were made on forms provided. In case the attending physician's certificate was inadequate, the association procured information through a local physician, but no resident physician was employed outside of Minneapolis. The right to make further investigation was reserved, but there was no evidence to show that anything had been done under it. Losses were adjusted by the directors in Minneapolis. The association accepted Benn's application for health insurance, solicited and recommended by Hartness, a member, November 6, 1908, and accepted a further application May 3, 1911. These were sent by mail from Kalispel, Mont., where both Benn and Hartness resided. Benn died, and the association refused to pay. His executor sued in Montana, and served a summons and complaint upon the secretary of state and the insurance commissioner of that state, which service was good under the laws of Montana, if the association was doing business there. Judgment was entered by default. Suit was brought on the judgment in Minnesota, and the Supreme Court held the judgment good. Benn v. Minnesota Commercial Men's Association, 149 Minn. 497, 182 N. W. 999. The Supreme Court of the United States said (page 145 [43 S. Ct. 295]):

"Considering what this court held in Green v. Chicago, Burlington & Quincy Ry. Co., 205 U. S. 531 [27 S. Ct. 595, 51 L. Ed. 916] Philadelphia & Reading Ry. Co. v. McKibbin, 243 U. S. 264 [37 S. Ct. 280, 61 L. Ed. 710], People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79 [38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537], and Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U. S. 516 [43 S. Ct. 170, 67 L. Ed. 372], we think it cannot be said that the association was doing business in Montana merely because one or more members, without authority to obligate it, solicited new members. That is not enough 'to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted.'

People's Tobacco Co. v. American Tobacco Co., supra, 87 [38 S. Ct. 233]."

That case, like all other cases, differs somewhat in its facts from this, but there was solicitation of insurance in Montana by Hartness and for this particular association. The policy was to cover a life in that state, so that the risk was a Montana risk. The association had other members in Montana, but the Supreme Court was of the opinion that it was not doing business there. In this case, there was no such solicitation of insurance, but there was the collection of the premium. If Hartness had received the dues from Benn and transmitted them to the company, it is scarcely conceivable that it would have changed the opinion of the Supreme Court.

We reach the conclusion that the Knickerbocker Insurance Company was not doing business within the state of Missouri, at the time of the attempted service of process in this case, in such manner and to such extent as to warrant the inference that it was present there by its duly authorized officers or agents. We see no merit to the contention of the plaintiff that, because the name of the broker appears on the sticker on the outside of the policy and upon the rider, there was a holding out of the broker as an agent which would prevent the defendant from asserting the claim which it does assert, or that, because clauses of the policy permitted the insurer to do certain things which could only be done in Missouri, but which it did not do, it must be held to be engaged in business there.

The judgment of dismissal is affirmed.