AYRES, Judge.
This is an action for an- accounting of funds allegedly, unauthorizedly, and wrongfully withheld by the International Shoe Company, predecessor of defendant, Interco, Incorporated, from commissions due plaintiff as an agent and a salesman for defendant, and for judgment for the amount found to be so withheld. The amount claimed, in the sum of $5,948.46, was not only established but conceded by the defendant to have been withheld as alleged.
From a judgment in plaintiff’s favor against Interco, Incorporated, for the aforesaid sum plus interest and costs, In-terco, Incorporated, appealed suspensively and devolutively to this court.
Presented on this appeal are questions appertaining (1) to the jurisdiction of the court and (2) to the actuality of plaintiff’s indebtedness to defendant which would warrant deductions from his commissions.
Jurisdiction was asserted under the provisions of LSA-R.S. 13:3201 et seq., commonly referred to as the “Long-Arm Statute” of this State.
In this connection, plaintiff alleged that defendant and its predecessor were and had been doing business in Louisiana for many years storing, warehousing, distributing, wholesaling, and retailing merchandise, notably shoes, to various stores in the State of Louisiana. Moreover, plaintiff’s contract of employment was entered into in the State of Louisiana.
The trial court’s findings, from its review of the record and with which we are in accord, are set forth in an opinion in which it is stated:
“Plaintiff was employed by defendant on July 1, 1940, as a commission salesman and was terminated on August 23, 1972. As shown by the pleadings of defendant, it claimed plaintiff was indebted to it in the sum of $5,948.46 on his ‘sample account’ and that beginning in May, 1966, regular deductions in the amount of $50.00 per month were withheld from plaintiff’s commissions for the purpose of discharging this indebtedness. This was routinely and regularly done, with the *502 exception of the month of July, 1966, when some $200.74 was withheld. At the time plaintiff was terminated it is claimed that he still owed defendant a balance of $1,979.67 on this account, which amount was deducted on commissions of sales which he had made prior to his termination date.
“Background information is essential to an understanding of the issues presented in this case. Plaintiff was a salesman for defendant for over 32 years. He was 51 years of age at the time of trial. He testified that from 1959 to 1964, or thereabouts, he was required to maintain a showroom in Shreveport to which customers could come and review the samples of shoes which he was selling for defendant. For two months rent on the showroom in the Captain Shreve Hotel was paid by defendant. [During that period of time, plaintiff’s commissions were determined on a rate of 2\/2%. Thereafter, the commissions were increased to 5%, out of which rent on the showroom and other expenses were required to be paid.] Prior to renting the space in the Captain Shreve Hotel, plaintiff had maintained an office in the Francis Hotel in Monroe, had then opened an office in the Town House in Shreveport and finally opened the office or display room in the Captain Shreve. He was furnished stationery and calling cards by defendant, and shipments were made to him at the Captain Shreve Hotel of merchandise, including samples of shoes. He worked exclusively for defendant and was paid on a commission basis. He called on customers in North Louisiana and in a portion of Arkansas.
“Plaintiff contended that he had no control over the number of samples shipped to him by defendant. At the end of a season those samples which were not to be continued in the line were to be sold by him and he was forbidden from returning them to defendant. He was further obligated and required to sell these samples for such price as he could get to those regular customers of defendant. Plaintiff testified that he was permitted to return some samples when he had so many on hand that he could not dispose of them, but that he was never able to reconcile records showing the samples returned or those for which he was given credit by defendant. The system of selling of samples was changed in either 1964 or 1965, at which time all samples were sent by the company salesmen to an establishment in Tennessee and thereafter no salesman was required to dispose of the samples or have any liability for them except to be responsible for them while in his possession. Among the evidence was [an exhibit] which showed plaintiff returning a great number of samples to defendant on April 2, 1964.
“Plaintiff acknowledged that as of November 23, 1964, he received a statement from defendant showing a balance due by him on his sample account of $5,948.46. Plaintiff contends that he denied he owed such an amount, and the evidence is clear that it was not until beginning in May, 1966, the deductions of $50.00 per month commenced. Defendant contends that at no time did plaintiff deny he owed defendant, nor did he object to the periodic deductions from commissions due him, and that as a result it relied on this acquiescence-by him to its detriment and that he is estopped to assert the invalidity of those deductions.
“Plaintiff contends that at no time did he agree that he owed any indebtedness and stated that he adamantly objected to the deduction to his then supervisor, a Mr. Jim Kelly. Plaintiff further contends that he was in no position to file suit or take other affirmative action to stop the monthly deductions of $50.00 because he had a good job, had been with the company a long time and was looking forward to retirement. It was only after he was terminated that he filed this suit.
*503 “He also urges that the amount of the claimed indebtedness became an account stated when he was furnished with the statement by defendant in 1964 that he was indebted to it for his sample account in the sum of $5,948.46. Accordingly, plaintiff contends that this account prescribed three years subsequently under Article 3538 of the Louisiana Civil Code. He further contends that a forced payment, that is, by deducting a portion of his commissions without his consent, agreement and unqualified promise to pay on his part, does not or did not interrupt prescription. In this connection he cites Ivey v. Joyce [La.App.], 195 So. 33.
“Plaintiff contends that defendant unilaterally imposed upon him an obligation to forfeit $50.00 per month of his commissions in payment of an alleged debt which he denied and, upon his being terminated from employment, a further forfeit was made of some $1,997.72. He contends that this money was wrongfully withheld from him. It is his contention that his claim is fully supported by two very old Louisiana cases, Millaudon vs. Lesseps, 17 La.Ann. 246, and Cooper vs. Harrison, 12 La.Ann. 631, these cases holding that the claim of an agent against his principal for services is not one on an open account.”
It is pertinent to note here that the so-called “Long-Arm Statute” provides:
“A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident’s
“(a) transacting any business in this state;
(b) contracting to supply services or things in this state;
(c) causing injury or damage by an offense or quasi offense committed through an act or omission in this state;
(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course or conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; or property in this state.”
(e) having an interest in, using, or possessing a real right or immovable property in this state.”
LSA-R.S. 13:3201.
On the question of venue, the statute further provides:
“A suit on a cause of action described in R.S. 13:3201 may be instituted in the parish where the plaintiff is domiciled, or in any parish of proper venue under any provision of the Louisiana Code of Civil Procedure other than Article 42.”
LSA-R.S. 13:3203.
The court concluded, under the aforesaid statutes, there were sufficient minimum contacts by defendant and its predecessor in the State of Louisiana, and particularly in Caddo Parish, where plaintiff resided, so that the maintenance of this action might not be held to offend the “traditional notions of fair play and substantial justice.” In this connection, in International Shoe Co. v. State of Washington, etc., 326 U.S. 310, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945), the then Chief Justice of the United States Supreme Court had occasion to point out:
“It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more *504 or a little less. . . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.

“But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. Compare International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, supra, with Green v. Chicago, Burlington & Quincy R. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, supra, and People’s Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, supra. Compare Connecticut Mutual Life Ins. Co. v. Spratley, supra, 172 U.S. 602, 619, 620, 19 S.Ct. 308, 314, 315, 43 L.Ed. 569, and Commercial Mutual Accident Co. v. Davis, 213 U.S. 245, 29 S.Ct. 445, 53 L.Ed. 782, supra, with Old Wayne Mut. Life Ass’n v. McDonough, 204 U.S. 8, 27 S.Ct. 236, 51 L.Ed. 345, supra. See 29 Columbia Law Review, 187-195.
“Applying these standards, the activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were systematic and continuous throughout the years in question. They resulted in a ' large volume of interstate business, in the course of which appellant received the benefits and protection of the laws of the state, including the right to resort to the courts for the. enforcement of its rights. The obligation which is here sued upon arose out of those very activities. It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant incurred there. Hence we cannot say that the maintenance of the present suit in the State of Washington involves an unreasonable or undue procedure.” (Emphasis supplied.)
See, also, McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), which was an action by a beneficiary on a life-insurance policy. The courts of Texas refused to enforce a California judgment obtained by a beneficiary in California against a Texas insurance company on the ground that the judgment was void under the Fourteenth Amendment to the Constitution of the United States because service of process was made on the insurer outside the State of California. The United States Supreme Court held that where the insurance contract was delivered in California, premiums were mailed from there, and the insured was a resident of California at the time of his death, due process did not preclude an entry of judgment against the Texas insurance company by the California court which based its jurisdiction on a statute subjecting foreign corporations to suits on insurance contracts with residents of that State, even though such companies could not be served with process within its borders and notwithstanding that the Texas company had no officers or agents in California and had apparently never solicited or done any business in California apart from the policy involved.
For the aforesaid reasons, we are in accord with the conclusions of the trial *505 court that all the minimum requirements for jurisdiction and venue have been met.
The account, as confected and charged by defendant, arises out of defendant’s actions in furnishing its salesmen with samples of shoes to be displayed to defendant’s customers as a part of the salesmen’s negotiations for sales. Defendant furnished plaintiff and its other salesmen with sample shoes for display as an aid in their negotiations for sales. At the end of the season, the samples were sold to regular customers and the proceeds remitted to defendant. On occasions, one salesman would be furnished with samples for only one foot, whereas another salesman would be furnished with samples for the other foot. In those instances, salesmen were obliged to get together and match their samples for pairing. Sales were then in like manner made and the proceeds remitted to the defendant. This practice, however, was discontinued.
Without the consent of plaintiff, all sample shoes supplied him were charged out to him. Moreover, the record appears to reflect that plaintiff knew nothing of the charges cumulated over the period of 1960-1964, inclusive, until all the charges had been entered against him. Thereafter, defendant instituted a practice, begun in April of 1966, of deducting $50.00 or more per month to apply on this plaintiff’s alleged account. Upon termination of his employment, in 1973, there was deducted from plaintiff’s earnings the additional sum of $1,997.72, bringing the total deductions to $5,948.46, the amount of the alleged account when the deductions began. In this connection, the trial judge also pointed out in his reasons for judgment:
“The record is clear that the accounting for samples received and disposed of by plaintiff was not a matter completely within his control. He had no choice concerning the number of samples sent to him, which, incidentally, was done at random periods of time. He was forced to try to sell the leftover samples for the best prices he could get, but was instructed to sell them to regular customers so that the brand name would not be adversely affected. The whole area of accounting left a great deal to be desired and we are not at all satisfied that defendant correctly maintained such an accounting. Defendant was in the position of being able to require plaintiff to accept whatever figure it may have reached in connection with his sample account. After all, it was the principal and he was the agent; it was the employer and he was the employee. While there is no corroboration, we believe that plaintiff did object to the deductions, but that he was not in a position to affirmatively do anything about it because of the fear of jeopardizing his job of long standing. Once his employment was terminated, he wasted no time in filing this suit seeking recovery of the funds which he contended were improperly and illegally withheld from his earnings. His suit was filed on November 2, 1972, after his termination in August, 1972. We do not believe that it would be proper in a case of this type to hold that plaintiff was es-topped from making this demand when all of the circumstances are fully taken into account.”
For the reasons herein assigned, including those by the trial judge, we find no error in the judgment appealed, and it is accordingly affirmed at defendant-appellant’s costs.
Affirmed.