## RENDLEMAN v. NIAGARA SPRAYER CO.

(District Court, E. D. Illinois.   December 3, 1925.)

No. 2153.

1. Corporations ⬤➥668(4)—Local customers of foreign corporation held not its agents, on whom process may be served.

Local dealers, purchasing goods from foreign corporation and reselling same in due course of business, *held* not agents, on whom process against corporation could be served.

2. Corporations ⬤➥668(4)—Territorial sales manager held agent of foreign corporation, on whom valid service might be made.

One employed by defendant, a foreign manufacturing corporation, and designated "territorial manager in charge of sales and service" in a designated territory, in a part of Illinois, *held* an agent of defendant on whom service might lawfully be made in an action against it in Illinois, where his contract required him to devote his entire time and ability to the service of defendant, and under its instructions he procured dealers for sale of its products, assisted them in making sales, demonstrated its machines, procured free repairs for purchasers, made collections, adjusted claims for damages, and generally exercised a wide discretion.

3. Principal and agent ⬤➥3(1)—Distinction between "agent" and "servant" stated.

A "servant" is a worker for another who deals ordinarily with things, and who has no power to bring about contractual relations with third persons; while an "agent" is one who deals not only with things, but persons, using his own discretion as to means, and frequently establishing contractual relations between his principal and third persons.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Agent; Servant.]

4. Corporations ⬤➥642(4½)—Foreign corporation held to be "doing business in state."

A foreign manufacturing corporation, which maintains an agent in a state, who procures dealers to handle its products, assists them in making sales, renders services to purchasers, and makes collections from them for the company, *held* to be "doing business in the state."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

5. Corporations ⬤➥668(15)—Valid service may be had on nonresident corporation, though in general transactions within state constitute interstate commerce, if any business is done within state.

Though transactions of a foreign corporation may be such as to constitute interstate commerce, yet if any part of that interstate commerce amounts to the transaction of business in the jurisdiction questioned, valid service may be had within the jurisdiction.

At Law. Action by Grover C. Rendleman against the Niagara Sprayer Company. On plea in abatement to the jurisdiction. Overruled.

David S. Lansden, of Cairo, Ill., for plaintiff.

Charles E. Feirich, of Carbondale, Ill., for defendant.

LINDLEY, District Judge. To the declaration in an action of trespass on the case filed by a citizen of Illinois, the defendant, a New York corporation, files a plea in abatement to the jurisdiction of the court, averring that no one of the men served was an agent of defendant, that its principal place of business is in New York, that it is not engaged in business in the state of Illinois and has no place of business in the latter state, and that its business consists of the manufacture and sale of dusting machines manufactured in New York and shipped to Illinois on contracts of sale completed in New York. The plea denies that Mike E. West, Percy West, and Jack V. Vernon, served as agents of the defendant, were in fact agents. Under well-recognized rules, if no one of the men served was an agent of the company, or if the defendant was not doing business within the state of Illinois, the plea must be sustained.

[1] Evidence has been heard, and it appears therefrom that two of the alleged agents, viz. the Wests, were local dealers of the defendant, located at Anna, Ill.; that they purchased dusting and spraying machines and chemical compounds from defendant f. o. b. the factory in New York, and had such goods shipped to their store in Anna, Ill., where they were resold in due course of business to fruit growers. This relationship does not establish agency upon the part of such dealers.

[2] A different question arises as to the character of the representation of Vernon, and as

to whether his activities, coupled with the other facts, amounts to the doing of business in the state of Illinois. In the written contract of employment between defendant and Vernon and in the letter from defendant to Vernon, supplementing said contract, Vernon was designated as "territory manager in charge of sales and service in the following territory," the territory including southern Illinois, western Kentucky, and southeastern Missouri. The contract provided that Vernon should "serve the company as directed by the company"; that he would "serve exclusively the company and its interests, and in such capacities and at such location as the company may direct; that he would follow the company's instructions in all respects touching the service, do all work assigned to him to the best of his ability, and devote his entire professional, business, and productive energies exclusively to his services hereunder."

The contract further provided that he should receive a compensation of $250 per month, his traveling expenses, and the expense of operating an automobile belonging to him, the license for which was paid for by defendant; that he should receive a commission on all sales in said territory in excess of $18,000 per year, and a special commission on all net sales of sulphur compound; and that he should be available at the direction of the general sales manager to assist in the sale of machines and chemicals of the Moline-Hooper Company. It was contemplated that he should have possession of samples and other company property, for the contract provided that upon termination of agreement he would return promptly any company property, including advanced moneys, samples, correspondence, etc. The fact that he agreed to devote his entire professional, business, and productive energies to his services indicates that he was a professional man, rendering professional services. This indication is supported by the further provision of the contract that he would assign to the company all inventions, improvements, and discoveries related to or connected with the business or production of the company, developed or discovered by him in the course of his employment, the provision that he should not disclose to any third person any information regarding the books, records, or correspondence of the company, or any apparatus, formula, or manufacturing method of the defendant, and the provision that he should keep such records and books as the company might require.

Vernon lived and voted at Anna, Ill. His territory was an extensive part of three states.

He devoted his entire time to the company's business. He took orders from fruit growers for the materials and products of defendant, the orders being directed to the dealers and being forwarded to the defendant in New York, sometimes by Vernon and sometimes by the dealers. He was expected to and did render his opinion as to the credit to be given and as to whether an order should be accepted. He testified that all orders sent in by him were shipped. He had an office with the dealers in Anna, but paid no rent, and he there had a desk and kept advertising matter, including pennants and display advertising. He installed dusting and spraying machines, adjusted, operated, explained, and demonstrated them to the purchasers, and taught the vendees how to use the same. He made repairs when necessary upon any machine made by the defendant, and agreed with the plaintiff to procure for him without cost to him repair parts, to be sent by the company. These repair parts were furnished in accordance with the agreement and plaintiff did not pay anything therefor. At other times he procured for the plaintiff and others, from the dealers, repair parts, which the dealers had purchased, and for which the fruit growers paid. Payments for machines, materials, and repairs were made to Vernon, who delivered the same to the dealers. Under the contract, it was a part of Vernon's duty to procure other dealers in his territory and he attempted to do so. He procured at least one other dealer at another point, and attempted to procure subdealers for the dealers at Anna. He assisted the dealers in making their sales, by interviewing and soliciting the fruit growers. He went into orchards where the products of the defendant were being used, discussed the condition of the trees, and made recommendations as to what should be done in treating them and in cultivating the orchards.

With the approval of the company, cooperating with the dealers, he called a meeting of southern Illinois fruit and vegetable growers in Anna in January, 1926. The printed invitation stated that the meeting was fostered by the Niagara Sprayer Company as its first move to establish Niagara service for the growers in southern Illinois. At that meeting the persons present to disseminate information were Mr. Connelly, assistant general sales manager, Mr. McDonough, the company's entomologist, and Mr. Vernon. These three men spoke, imparting information to growers and customers concerning trees, the effect of insects and diseases, and the service rendered by defendant's products. Mr. Con-

nelly advised those present that the company would keep a service man in the community and that that man would probably be Vernon. Probable purchasers evidently expected when they bought the products of defendant that the service rendered by Vernon would be rendered and that the cost of the same would be upon defendant. A meeting similar to that held at Anna was held at Cobden, at which Mr. Vernon and the chief horticulturist were present. These meetings embraced a service program and included a discussion of the fruit growers' problems. They were held at the request of the local dealers and the expense thereof was paid by the local dealers. Vernon prepared the copy for the invitation and sent it to the printer.

At the meeting at Anna, the plaintiff was present and made a claim for the damages now sued for. Mr. Connelly, the assistant sales manager, could not go out to plaintiff's farm, but stated that he would have Vernon come. Vernon later went, Connelly having left the matter to Vernon's discretion, according to the latter's testimony, and he discussed the facts asserted by the plaintiff, investigated them, discussed the claim, the alleged injury, and the effect of defendant's products upon the trees and reported to the company. He made at least two such trips. In his testimony he refers to the plaintiff and others as "our" customers. He set up the plaintiff's machine, operated it for two hours, explained its workings to plaintiff and his employees, and came once a week for several weeks to observe the workings and to advise with the plaintiff and his employees. His compensation and expenses were borne entirely by the defendant.

[3] It seems apparent to the court in this situation that Vernon was more than a mere servant; that he was in fact an agent, employed in a capacity superior to that of a servant, and clothed with a greater discretion than a mere servant. A servant is a worker for another, who deals ordinarily with things, and who has no power to bring about contractual relations with third persons; while an agent is one who deals, not only with things, but persons, using his own discretion as to means allowed, and frequently establishing contractual relations between his principal and third persons. A servant has no discretion, but must perform his service in a manner commanded by the master. See Story on Agency, § 4; Mechem on Agency, §§ 1 and 2. Here Vernon was exercising all of his professional and trained capacities solely in the promotion of the defendant's business. He was a territory manager, in charge of sales and service. He took orders, made recommendations as to credits, and forwarded them to the dealer or defendant. He investigated and discussed claims for damages—even entered into contractual relations between the defendant and the growers in agreeing to have the company furnish repairs, and in delivering the same without cost to plaintiff. He was evidently technically educated in the questions arising, and frequently gave advice to the customers.

Considering all of the facts in the record, it seems manifest to the court that Vernon was vested with a wide discretion, that his business was that of doing whatever the company wanted done in his territory in the way of sales and service, that he could and did procure local dealers, that he could and did furnish services which required the making of contractual relations, and in many ways exercised the discretion of an executive officer delegated to him by the company, not only in the employment contracts, but also in the various acts that he openly performed while acting as their territory manager in charge of sales and service.

[4] It follows naturally from the conclusion of the court with respect to the character of the agency of Vernon that the company was doing business within the jurisdiction of the court. The company's business was that of manufacturing and selling dusting and spraying machines and chemical compounds. Ultimate sales could be made only to fruit growers, and though they were made first to local dealers, who in turn sold to the growers, it is evidenced that the company was most active in southern Illinois in promoting the sales of its product, in demonstrating the uses of its machines, in adjusting them, in keeping them in repair, in furnishing repairs free, in procuring dealers, and that through its territory manager in charge of sales and service it did all of these things in most active furtherance of its business. As stated in the case of Connecticut Mutual Life Insurance Company v. Spratley, 172 U. S. 602, 19 S. Ct. 308, 43 L. Ed. 569: "It is a question simply whether a power to receive service of process can reasonably and fairly be implied from the kind and character of agent employed. * * * In such case it is not material that the officers of the corporation deny that the agent was expressly given such power, or assert that it was withheld from him. The question turns upon the character of the agent, whether he is such that the law will imply the power and impute the authority to him, and, if he be that kind of an agent, the implication will be made, notwithstanding a

denial of authority on the part of the other officers of the corporation."

Whether the power exists to receive service—that is, whether or not the defendant is doing business within the district—is a question depending entirely upon the facts, so that no hard and fast rule can be adhered to. It is true that probably no one of the facts in this record of itself would support a finding favorable to the plaintiff, but the character of what was being done, as shown by all of the facts, the continuity of action, the discretionary and executory character of the service rendered by Vernon, taken as a whole, seem to the court necessarily to impel a finding that this company was delegating its discretionary and executory business within the Eastern district of Illinois to its territory manager in charge of sales and service there located. Such a conclusion seems to the court entirely consistent with the cases cited by the defendant and amply supported by the various cases submitted by the plaintiff, including Cheney Bros. Company v. Commonwealth of Massachusetts, 246 U. S. 147, 38 S. Ct. 295, 62 L. Ed. 632; St. Louis Southwestern Railway Co. v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77; Chicago Board of Trade v. Hammond Elevator Company, 198 U. S. 424, 25 S. Ct. 740, 49 L. Ed. 1111; International Text Book Company v. Pigg, 217 U. S. 91, 30 S. Ct. 481, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103; Knapp v. Bullock (D. C.) 242 F. 543; Tauza v. Susquehanna Coal Co., 220 N. Y. 259, 115 N. E. 915; American Hide & Leather Company v. Southern Railway Company, 310 Ill. 524, 142 N. E. 200.

The court does not mean to say that each of these cases is one parallel to that now before the court, for the facts differ in each case, and different rules of law control in some of the cases; but the reasoning of the Supreme Court of the United States in the various cases cited and the other well-recognized authorities mentioned support the conclusions of the court here. No good purpose would be served by an exact discrimination of many of the cases cited by the defendant. Rather the court prefers to say that its opinion is grounded upon a finding of fact that the defendant delegated to Vernon such discretionary and executory powers that he might in its behalf be doing business in the Eastern district of Illinois, and that his acts were such as to amount to the doing of business.

[5] The question, of course, is not whether the defendant has complied with the laws of Illinois governing foreign corporations, nor whether the transactions in question are interstate in character, for it is well recognized that, though transactions may be of such character as to constitute interstate commerce, yet, if any part of that interstate commerce amounts to the transaction of business in the jurisdiction questioned, then valid service of process may be had within the jurisdiction. See Inter-National Harvester Company v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479. The question is one of due process of law arising under the federal Constitution. See Pembleton v. Ill. Men's Association, 289 Ill. 99, at page 107, 124 N. E. 355. Nor is the question of the state's right to tax the defendant involved.

The finding is for the plaintiff against the defendant upon the plea in abatement, which is overruled. There will be an order that the defendant plead over on or before a day to be fixed by the court upon motion of the plaintiff.