138 So. 834

## ST. MARY'S OIL ENGINE CO v. JACKSON ICE & FUEL CO.
### 7 Div. 998.

Supreme Court of Alabama.
Dec. 17, 1931.

Rehearing Denied Jan. 21, 1932.

Knox, Dixon, Sims & Dixon, of Talladega, for appellant.

154

Harrison & Stringer, of Talladega, for appellee.

BROWN, J.

This action is by appellee, a domestic corporation, against the appellant, a nonresident or foreign corporation that has not qualified under the provisions of the Constitution and the statutes enacted in pursuance thereof, requiring foreign corporations to have a known place of business and to designate an agent upon whom process may be served. Constitution 1901, § 232.

The controversy between the parties arises out of a sale of two "St Mary's Diesel Oil Engines" and the equipment necessary to their installation, sold by the defendant to the plaintiff, and for which the plaintiff had paid in part.

The complaint on which the case was tried consists of counts D, E, and F.

Count D seeks to recover the purchase money, after rescission of the contract of sale, because of a breach of warranty.

Count E declares on a breach of warranty embraced in the contract of sale.

Count F is double in its aspects, and is rested on a rescission of the contract because of the breach of warranty, and fraud and deceit practiced by the defendant in inducing the plaintiff to purchase the machinery.

The suit was instituted in Talladega county, Ala., and the summons and complaint was served by the sheriff of that county on defendant's office manager and bookkeeper, "M. F. Hucke, as Agent of St. Mary's Oil Engine Company, a body corporate, Defendant," commanding it to appear before the circuit court of said county within thirty days from the service of said process.

The fact of such service was communicated by Hucke to the defendant, and before pleading, the defendant appeared specially and, limiting its appearance to question the sufficiency of service to give the court jurisdiction over the person of the defendant, moved the court to quash the service, and by plea in abatement asserted that the county wherein the suit was instituted was not the proper venue.

The grounds on which the motion to quash was rested are that at the time the action was commenced and at the time of the service of the summons and complaint on Hucke, the defendant was a foreign corporation domiciled in the state of Missouri; "that it is not now, nor was it at any of said times doing business by agent in Talladega County;" that on to wit, the 14th of October, 1929, when the summons and complaint were served and noted on the process "as having been made upon one M. F. Hucke as agent for" defendant, said Hucke was not authorized or empowered to accept service for said corporation, *nor was he such officer or agent of defendant* upon whom valid service could be made, at the time and place of such service, "nor was said defendant doing business by him at said time and place within the provisions of section 10471, Code of 1923."

The plea alleges "that at the time this action was commenced and at the time of the purported service of said summons and complaint it (the defendant) was a foreign corporation, having its domicile in the State of Missouri, and that it was not at any of said times, and is not at the present time doing business in the State of Alabama, Talladega County, by agent or otherwise."

After a demurrer interposed by the plaintiff to the plea was overruled, by agreement of the parties the question of law and fact raised by the motion and plea was submitted to the court, sitting without a jury, on depositions taken by the defendant and testimony given ore tenus by the plaintiff, and documentary evidence, and thereupon the motion to quash was denied and the plea overruled.

Thereafter the case was tried on its merits, resulting in a verdict and judgment for the plaintiff, and from that judgment the defendant has appealed.

The ruling of the court on the motion to quash the service presents the question of due process of law within the meaning of the Fourteenth Amendment of the Federal Constitution, and appellant's contention is that service, to be efficacious, must be made on an officer or agent of the corporation while such officer or agent is in the exercise of corporate functions—that is, performing an act or function for which the corporation was primarily created—and that Hucke, the person served, was not exercising any such power.

█ It appears without dispute that the defendant is a foreign corporation, and that it has not qualified to do business in Alabama; therefore the provisions of section 232 of the Constitution requiring foreign corporations to qualify by establishing a place of business in this state and the designation of an agent upon whom process may be served, as a prerequisite to engaging in business in this state, and the statute enacted in pursuance thereof, in so far as they provide a mode of service on foreign corporations, are confined to corporations that have qualified thereunder, and are foreign to the question in this case. Jefferson Island Salt Co. v. E. J. Longyear Co., 210 Ala. 352, 98 So. 119.

██ *The law is well settled* that to sustain an action against a nonresident in the state court, the court must have jurisdiction of the subject-matter of the suit and the person, acquired by service of process authorized by the statutes of the state, and consistent with due process under the Fourteenth Amendment of the Federal Constitution. And as a general rule, a nonresident, whether an individual or a corporation, is suable in the state courts upon a cause of action arising within the jurisdiction of the state, if service of process efficacious to give jurisdiction of the person can be perfected. Equitable Life Assurance Society v. Vogel's Ex'x, 76 Ala. 441, 52 Am. Rep. 344; Weymouth v. Washington, Georgetown & Alexandria R. Co., 1 MacArthur (8 D. C.) 19; 14a C. J. 1383, § 4099.

The cause of action declared on by the plaintiff arises out of an alleged breach of warranty embodied in a written contract between the parties of date July 17, 1927, whereby the defendant sold to the plaintiff two Diesel oil engines, one of the engines at the time of the sale being located in this state, and delivered f. o. b. Stevenson, Ala. Both engines with their equipment were installed in plaintiff's plant in Jackson, Ala., by the defendant.

Embodied in the contract were stipulations to the effect: (1) That when properly in-

stalled, the company (defendant) guarantees said machinery to deliver its full rated horse power and to operate successfully on crude oil or any of its distillates, provided the fuel oil used is clean and free from water and other impurities, and flows to the engine and is of a specified test. (2) That if complaint be made to the company by the purchaser that the machinery is not meeting the aforesaid guaranty, "then the Company shall have a right to make test of said machinery, and such test consists of three eight-hour day's operation of said machinery. Such test shall be conducted by the engineer of the Company who shall have entire charge thereof. The purchaser shall furnish the load necessary for such test, and all assistance, fuel and other things necessary for such test." That if the test is not satisfactory to the purchaser, the company shall have a reasonable time to remedy such "defects and deficiencies." (3) If within a reasonable time after such test "it shall appear to be beyond the power of the company to make such machinery operate according to said guarantee, then the purchaser shall remove the machinery at the expense of the company within a reasonable time and ship said machinery to the company at its expense, and the company shall refund to the purchaser all purchase money paid to the company, and the contract shall thereby become null and void."

At the time the contract was entered into, as appears from the contract itself, and from other evidence offered, the plaintiff paid part of the purchase money in cash and part by exchange of two engines of smaller horse power theretofore purchased by it from defendant, plaintiff giving its note for the balance.

██ ██ The evidence offered by the plaintiff on the hearing of the motion further goes to show that the machinery did not operate as guaranteed, and plaintiff after notice removed the machinery from its plant, stored it, and notified the defendant.

In the meantime, the defendant had transferred and assigned plaintiff's notes to a finance corporation who had brought suit thereon in Clarke county against the plaintiff, which was still pending.

The evidence further shows that during the years 1927, 1928, and 1929, the defendant had sold some of the engines manufactured by it to different and sundry persons, as the court was authorized to find, under like contracts as that made with the plaintiff, some of which were erected and installed by the defendant, and through its engineers sundry inspections and tests were made of the machinery in the plaintiff's plant and in the plants of other of its customers.

It further appears that the defendant had, in the person of one Hill, who resided in Montgomery, Ala., a representative who had authority to take applications from prospective purchasers of its Diesel oil engines, to be submitted to and accepted by the defendant at its home office, and defendant advanced money to him in the way of commissions, and who by the authority of defendant's president called on plaintiff's president to adjust the controversy arising out of the alleged breach of contract between the plaintiff and the defendant.

As to the relation of M. F. Hucke, the person upon whom the process was served, and the character of his mission to Alabama, the evidence shows that he was defendant's office manager and bookkeeper; that his general duties were to keep the defendant's books, send out bills, and make collections, and, when not otherwise engaged, to assist in the sales department.

J. D. Anderson, the president of the defendant, testified: "The circumstances in connection with M. F. Hucke being present in the City of Talladega on the occasion of October 14th, 1929, when purported service in this case was made upon him, were as follows: M. F. Hucke was making a visit to various accounts for the St. Mary's Oil Engine Company, his mission being that of a collector and salesman, and being near Talladega County, and knowing that there was a controversy with Judge Oliver (the President of the plaintiff corporation), he visited Judge Oliver to see if he had any compromise offer to make that could be submitted to the St. Mary's Oil Engine Company so that it could take up the question with the Finance Company, who owns the notes, for the purpose of getting the controversy settled out of Court. Mr. Hucke was employed on November 1st, 1926, as a bookkeeper or office manager."

Oliver testified: "I had not written Mr. Hucke suggesting that he come down here last year. I didn't know he was coming until he got in my office. When he came to Talladega he came into the office, * * * and said his name was Hucke or something like that, and he said he represented the St. Mary's Oil Engine Company and was just from Samson, Alabama, and came by to see if he could not compromise that lawsuit. I had not filed any lawsuit against him at that time, but the Finance Company claiming to own these notes which I had made, had filed a suit against the Company in Clarke County, Alabama, and I was defending that suit down there. I told him that I would have to see my lawyer, Mr. Stringer, and we had better go to the court house, and we went over and saw Mr. Stringer and he said he was busy and he would see us at 12 o'clock, and he went one way and I went another, and at 12 o'clock we met in Mr. Stringer's office, Mr. Stringer, Mr. Hucke and myself, and he offered $350.00 in cash and would release us

settled this case in Clarke County, that is he would have the suit withdrawn and pay $350.00 paid to us. I then made him a counter proposition that if he would dismiss the lawsuit pending in Clarke County and reimburse us for the two notes of about $450.00 each which we had paid him on the last engine, and $325.00 in cash, we would settle with him and wipe out everything and return the engines. He first said that that was more than I offered their Mr. Hill a year previous to that, and I said I would recommend to my directors to settle if he would settle it. He said then after that, that he was not authorized to pay that amount, and that he would get in communication with his Home Office and write us and let us know what he would do."

The evidence further tends to show that Hucke immediately went to the long-distance 'phone and communicated with the defendant's home office, and as he concluded the conversation and stepped out of the telephone booth he was served by the officer with the summons and complaint.

From the foregoing facts, it is clear that the cause of action upon which the plaintiff sues—the breach of warranty—occurred in this state, and that the circuit court of Talladega county had jurisdiction of the subject-matter.

Our judgment further is that the evidence warranted the conclusion, which the trial court reached, that the defendant was, during the years 1927, 1928, and 1929, engaged in business in this state, by making contracts for the sale of its products, which were in part to be performed in Alabama by the erection and installation of its engines and their equipment sold to its customers in this state, guaranteeing said engines to function and reserving the right and assuming the duty to operate them in testing their efficiency. American Amusement Co. v. East Lake Chutes Co., 174 Ala. 526, 56 So. 961; George M. Muller Mfg. Co. v. First Nat'l Bank of Dothan, 176 Ala. 229, 57 So. 762; Jefferson Island Salt Co. v. Longyear, 210 Ala. 352, 98 So. 119; Friedlander Bros. v. Deal et al., 218 Ala. 245, 118 So. 508; International Cotton Seed Oil Co. v. Wheelock, 124 Ala. 367, 27 So. 517; Knapp v. Bullock Tractor Co. (D. C.) 242 F. 543.

Since the decision of the Supreme Court of the United States in the case of St. Clair v. Cox, 106 U. S. 350, 1 S. Ct. 354, 27 L. Ed. 222, reaffirmed in Connecticut Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, 19 S. Ct. 308, 43 L. Ed. 569, the law has been settled that a nonresident corporation, like a nonresident individual, is suable in any state where it may be personally served with process, if the state court has jurisdiction of the subject-matter of the suit.

An individual, to be efficaciously served with process, must personally come within the jurisdiction of the state, while a corporation can be present only through its acts performed by its officers and agents, and its presence in the state must be manifested by its engaging in business; that is, by performing its corporate functions within the jurisdiction. If its presence is so manifested, then process may be efficaciously served on any agent of the corporation who is acting within the line and scope of his agency, if the statute of the state so authorizes and is consistent with due process of law. Connecticut Mut. Life Ins. Co. v. Spratley, 172 U. S. 602, 19 S. Ct. 308, 310, 43 L. Ed. 569; Premo Specialty Mfg. Co. v. Jersey-Creme Co. (C. C. A. 9th Circuit) 200 F. 352, 43 L. R. A. (N. S.) 1015.

In Spratley's Case, supra, a suit on a policy of life insurance, the facts in respect to the service, to quote from the opinion, were: "Mr. Spratley died in the city of Memphis, in the state of Tennessee, on the 28th of February, 1896, leaving his widow, the defendant in error, surviving him. The two policies were in force at the time of his death. The company, being notified of the death of Mr. Spratley, sent its agent to Memphis to act under its instructions in the investigation and adjustment of the claim. Mr. Chaffee was the agent employed, and he had been employed in the service of the company since the 1st day of July, 1887. The writing under which he was employed stated that the company employed him 'for special service in any matters which may be referred to you, with instructions, during the pleasure of the directors of the company and under the direction of the executive officers; to have your entire time and services, except upon leave of absence; to pay the necessary traveling and hotel expenses incurred in the line of your duty, and to pay you for your time and services at the rate of $2,500 per annum—this agreement terminable, on the part of the company, at the pleasure of the directors, and on your part by thirty days' written notice.' The company sent Mr. Chaffee specially to the state of Tennessee for the purpose of investigating into the circumstances of the death of Mr. Spratley, and into the merits of the claim made by Mrs. Spratley, and while there was authorized by the company to compromise the claim made by her upon terms stated in a telegram from the vice president of the company. While Mr. Chaffee was engaged in negotiations with Mrs. Spratley and her brother in relation to her claims, and after she had refused to accept the compromise offered by him in behalf of the company, and on April 15, 1896, he was served, in Memphis, with process against the corporation in an action upon the policies above mentioned." And as to the efficacy of this service, it was observed by the court, speaking through Mr. Justice Peck-

ham: "This case is unlike that of St. Clair v. Cox, 106 U. S. 350, 1 S. Ct. 354 [27 L. Ed. 222]. There the record of the judgment, which was held to have been properly excluded, did not (and there is no evidence which did) show that the corporation was doing business in the state at the time of the service of process on the person said to be its agent. Nor did it appear that the person upon whom the process was served bore such relations to the corporation as would justify the service upon him as its agent. In the course of the opinion in that case, Mr. Justice Field, speaking for the court, said: 'It is sufficient to observe that we are of opinion that, when service is made within the state upon an agent of a foreign corporation, it is essential, in order to support the jurisdiction of the court to render a personal judgment, that it should appear somewhere in the record—either in the application for the writ, or accompanying its service, or in the pleadings or in the finding of the court—that the corporation was engaged in business in the state. The transaction of business by the corporation in the state, generally or specially, appearing, and a certificate of service of process by the proper officer on a person who is its agent, there would, in our opinion, be sufficient prima facie evidence that the agent represented the company in the business. * * *' Here we have the essentials named in the above extract from the opinion of the court in St. Clair v. Cox. We have a foreign corporation doing business in the state of Tennessee. We have its agent present within the state, representing it by its authority in regard to the very claim in dispute, and with authority to compromise it within certain limits, and his general authority not limited to a particular transaction. On the contrary, as seen from his written appointment, his agency for the company was a continuous one, and had been such since 1887, although, of course, his agency was limited to a certain department of the business of the corporation. The case does not hold that a foreign corporation cannot be sued in any state unless it be doing business there, and has appointed an agent expressly that process might be served upon him for it. Speaking of the service of process upon an agent, the learned justice thus continued: 'In the state where a corporation is formed, it is not difficult to ascertain who are authorized to represent and act for it. Its charter or the statutes of the state will indicate in whose hands the control and management of its affairs are placed. Directors are readily found, as also the officers appointed by them to manage its business. But the moment the boundary of the state is passed difficulties arise. It is not so easy to determine who represents the corporation there, and under what circumstances service on them will bind it.' This language does not confine the service to an agent who has been expressly authorized to receive service of process upon him in behalf of the foreign corporation. If that were true, it would be easy enough to determine whether the person represented the corporation, as, unless he had been so authorized, he would not be its agent in that matter. In the absence of any express authority, the question depends upon a review of the surrounding facts and upon the inferences which the court might properly draw from them. If it appear that there is a law of the state in respect to the service of process on foreign corporations, and that the character of the agency is such as to render it fair, reasonable, and just to imply an authority on the part of the agent to receive service, the law will and ought to draw such an inference and to imply such authority, and service under such circumstances, and upon an agent of that character, would be sufficient. Mutual Life Ins. Co. v. Spratley, 172 U. S. pages 607, 608, 615, 616, 617, 19 S. Ct. 308, 313, 43 L. Ed. 569.

The statute of this state regulating the service of process provides: "When the suit is against a corporation the summons may be executed by the delivery of a copy of the summons and complaint to the president, or other head thereof, secretary, cashier, station agent or *any other agent thereof*," etc. (Italics supplied.) Section 9421, Code of 1923.

The evidence offered on the trial of the motion to quash the service was sufficient to support the conclusion that defendant's office manager and bookkeeper was sent into this state by the corporation to visit its customers, collect accounts, make sales, and to call upon the president of plaintiff corporation and settle and adjust the controversy out of which this litigation arises, and he was engaged in and about the duties of his agency when served; that this service on said Hucke was authorized by the statute, and this service in connection with the fact that the defendant was doing business in Alabama constituted due process of law. Therefore, we are of opinion that the motion was denied without error.

The statutes prescribing the venue of *personal actions* (sections 10467, 10471, Code 1923) are not applicable to nonresident individuals or nonresident corporations which have not qualified to do business in this state, and therefore the defendant was suable in any county in the state where service of process might be made. New York, Lake Erie & Western R. Co. v. Estill, 147 U. S. 591, 13 S. Ct. 444, 37 L. Ed. 292; In re Hohorst, 150 U. S. 653, 14 S. Ct. 221, 37 L. Ed. 1211; 27 R. C. L. p. 803, § 23. The defendant's plea in abatement was therefore overruled without error.

The provisions of the contract, made exhibit to the several counts, pertinent to their sufficiency as against the demurrer, are:

"The machinery specified herein, shall be tested by the Company at its factory before delivery, and the Company guarantees that said machinery shall develop 60 and 20 actual H. P. at such test.

"When properly installed, the Company guarantees said machinery to deliver its full rated horse power and to operate successfully on crude oil or any of its distillates, provided the fuel oil used is clean and free from water and other impurities; that it flows to the engine, and that it tests no lower than twenty-eight degrees Baume, and contains not less than nineteen thousand five hundred (19,500) B. T. U. per pound; and provided further, that it is operated on new, unused lubricating oil of an approved grade. Subject to the above the Company guarantees the fuel consumption of said engine not to exceed:

| 60 HP | 20 Hp | |
|---|---|---|
| .45 | .5 | pound per B. H. P. per hour for full load |
| .5 | .55 | pound per B. H. P. per hour for three-quarter load |
| .55 | .6 | pound per B. H. P. per hour for half load. |

"The load is to be constant.

"Test:

"If complaint be made to the Company by the Purchaser that said machinery is not meeting the aforesaid guarantee, then the Company shall have a right to make test of said machinery, and such test consist of three, eight-hour day's operation of said machinery. Such test shall be conducted by the engineer of the Company who shall have entire charge thereof. The Purchaser shall furnish the load necessary for such test, and all assistance, fuel and other things necessary for such test; such test shall be made within a reasonable time after such complaint has been received by the Company at its home office. If such test shall show said machinery to operate according to said guarantee, then the Purchaser shall deliver to the Company's engineer, a written acknowledgment of such fact; however, if at the end of such test the Purchaser fails or refuses to deliver to the Company's Engineer, a written acknowledgment that said machinery operates according to said guarantee, then the Purchaser shall immediately notify the Company at its home office, by registered letter, in what particular the Purchaser claims said machinery to be defective or to be deficient within said guarantee, and the Company shall thereafter have a reasonable time to remedy such defects and deficiencies. The failure of the Purchaser to notify the Company as before provided for, of the claimed defects or deficiencies within ten days after the complaint of said test, shall constitute and be construed to be an acknowledgment by the Purchaser that said machinery has operated successfully at said test in strict accordance with said guarantee. If the complaint aforesaid be not made within fifteen days after said machinery is put in operation, or if such test cannot be conducted because of the fault of the Purchaser, then said guarantee shall be null and void and the Company shall not be bound thereby, and said machinery shall then be considered accepted by the Purchaser.

"If, within a reasonable time after such test, it shall appear to be beyond the power of the Company to make such machinery operate according to said guarantee, then the Purchaser shall remove the machinery at the expense of the Company within a reasonable time and ship said machinery to the Company at its expense, and the Company shall refund to the Purchaser all purchase money paid to the Company, and the contract shall thereby become null and void, and all obligations and liability of either of the parties hereto to the other, shall cease, and the Company shall not be held liable for any damages on account of any delays caused by said defects or deficiencies, or on account of any loss in operation by the Purchaser, or any other damages, but the repayment of said purchase money shall be the sole liability of the Company."

The breach alleged in count D as a predicate for the plaintiff's right to rescind is that the defendant, after notice given by the plaintiff, "within fifteen days after said machinery was put in operation," and complaint that the machinery was not meeting the guaranty, the defendant failed to make the test provided for in the contract, "*and that within a reasonable time after such failure of defendant to make such test,*" plaintiff rescinded said contract. (Italics supplied.) The demurrer takes the point, among others, that the italicized averment is a mere conclusion of the pleader, and that good pleading requires the statement of the date of the rescission, together with the circumstances which would enable the court, as a matter of law, to determine whether or not the right of rescission was exercised within a reasonable time. This is the rule of our decisions, and it must be held that the demurrer was erroneously overruled. Brunner v. Mobile-Gulfport Lbr. Co., 188 Ala. 248, 66 So. 438; Central L. & T. Co. v. McClure L. Co., 180 Ala. 606, 61 So. 821; Continental Jewelry Co. v. Pugh Bros., 168 Ala. 295, 53 So. 324, Ann. Cas. 1912A, 657; Capital Fertilizer Co. v. Ashcraft-Wilkinson Co., 202 Ala. 92, 79 So. 484.

Count F is affected with the same infirmity as count D. Moreover, in one of its aspects this count is ex contractu and in the other ex delicto. In one of its phases it alleges a breach of the warranty and a rescission by the plaintiff because of such breach, and in the other it alleges that the defendant's agent, while acting within the scope of his employment, falsely represented

that said engines and machinery were in good working condition and perfect mechanical condition; that plaintiff relied thereon and was induced to enter into the contract to its damage. The two phases of the count are inconsistent, involving different obligations and burdens, and the measure of damages is different. Millsapp v. Woolf, 1 Ala. App. 599, 56 So. 22; Scott v. Holland, 132 Ala. 389, 31 So. 514; Coleman v. Night Commander Lighting Co., 218 Ala. 196, 118 So. 377.

We are not of opinion that the doctrine of error without injury can be applied to these several rulings, and as the case must be reversed because of them, the other matters argued will not be considered.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.