SHIPPERS PRE–COOLING SERVICE
v. MACKS:

No. 12875.

United States Court of Appeals,
Fifth Circuit.

March 28, 1950.

Rehearing Denied April·28, 1950.

Frank W. Davies, Birmingham, Ala., for appellant.

J. Kirkman Jackson, Birmingham, Ala., for appellee.

Before HOLMES, McCORD, and BOR-AH, Circuit Judges.

McCORD, Circuit Judge.

Offie L. Macks, a resident of Florida, brought this suit for damages against Shippers Pre-Cooling Service, a Texas corporation, for personal injuries sustained as a result of the alleged negligence of the defendant while plaintiff was engaged in switching freight cars for the St. Louis & San Francisco Railroad Company at Atmore, Alabama.

The complaint contains three counts. The first and second counts charge simple negligence, while the third count alleges wanton or willful injury and sets forth a claim for punitive damages.

Defendant filed a motion to quash service of the complaint as insufficient, in that no

personal service was had, but only purported service on the Secretary of State of Alabama, as statutory agent for defendant. See Code of Alabama, 1940, Title 7, Section 193. This motion was overruled by the trial court, whereupon defendant, in answer, interposed defenses of (1) a plea in abatement, on the ground of improper venue, which was held insufficient by the court; (2) the general issue; and (3) contributory negligence. A further motion for leave to make the St. Louis-San Francisco Railroad Company a third party defendant was granted by the court. However, in a pretrial order, the court ordered a separate trial of the issues made by the third party complaint, and proceeded to trial solely on the issues framed by the original complaint and answer.

The case was tried to a jury, which returned a verdict in favor of plaintiff in the amount of $13,750. A motion to set aside the verdict and, in the alternative, for a new trial, was thereafter overruled.

The evidence shows that shortly before the accident in which plaintiff was injured, Glen W. Smith, an employee of defendant, was engaged in pre-cooling a railroad freight car loaded with potatoes, which was then located on a side track near the south end of a potato shed in the railroad yard at Atmore, Alabama. This pre-cooling operation was being performed by means of a heavy apparatus mounted on a Ford truck, having dual wheels in the rear, and measuring about 12 feet high.

While Smith was thus engaged, the plaintiff, who was regularly employed by the railroad as conductor of a local freight train that ran between Pensacola, Florida, and Magnolia, Alabama, came up to Smith and informed him he would have to discontinue pre-cooling the freight car in question and remove his equipment so as to allow a switch engine on which plaintiff was then acting as conductor to pull out another loaded freight car which was further south along the same track. Smith agreed to disconnect his pre-cooling apparatus and remove it and his truck a sufficient distance away so that plaintiff and his switching crew could connect a line of boxcars with the car on which Smith had been working, and could then move them

further south along the same track to pick up the other car which had already been pre-cooled and loaded. Plaintiff agreed to bring back the car which Smith had been pre-cooling, and to spot it along the track a little further south from where it was then located to a point where the ground was more firm and level, in order to make it easier for Smith to complete the pre-cooling operation on that particular freight car.

Accordingly, Smith disconnected his truck and pre-cooling apparatus from the freight car, and removed it to a point beside the track approximately five to ten feet away. In the meantime, plaintiff and the switching crew connected a cut of boxcars to the car on which Smith had been working, and then proceeded further south on the track to couple the loaded car which was ready for shipment. After connecting both cars, they proceeded along the track in a northerly direction to a switch about two hundred yards from the potato shed. They then placed the loaded car on a side track known as "Wells Lead Track", and commenced to bring the car Smith desired back onto the side track where Smith had been conducting his pre-cooling operation.

While plaintiff and his crew were completing the above switching operation, Smith had attempted to move his pre-cooling apparatus and the truck into a position closer to the track, so as to be ready to resume pre-cooling the freight car as soon as it was spotted in the desired place on the track by plaintiff and his crew. It is practically without dispute, however, that plaintiff had no knowledge that the truck and equipment was being thus moved, and that Smith had not informed him that he contemplated placing the truck and equipment closer to the track while plaintiff was engaged in the switching operations. While the truck and pre-cooling apparatus were being moved by Smith to a more advantageous position closer to the track, without previous warning to plaintiff and without his knowledge or consent, the truck bogged down in the mud in dangerous proximity to the track. Meanwhile plaintiff and his switching crew had coupled the loaded car and started the engine and boxcars back south, for the purpose of returning the car Smith wanted and spotting it on the side track at the de-

sired position. As the train came back moving at a comparatively slow rate of speed plaintiff was hanging on the southeast side of the leading box car in a position where he could direct the spotting operation and relay the necessary signals to the engineer. During this time, Smith, having failed in an effort to get the truck out of the mud and remove it a safe distance away from the track, was standing to the rear of the truck watching the train return with the desired box car. Plaintiff, being thus engaged in the spotting operation, and not knowing that the truck had been moved closer to the track, failed to observe the danger of being caught between the boxcar on which he was riding and the truck until it was too late for him to get off the car or stop the train. As the leading boxcar passed the truck his left hip struck the side of the truck nearest the moving train and was crushed. Plaintiff then pulled himself up as close as possible against the box car and managed to scrape through the space between the truck and the box car before falling to the ground beyond, after sustaining the fractured hip and other severe bruises and injuries.

A number of witnesses testified on behalf of defendant that just before the accident they saw plaintiff riding on the side of the box car holding on with his right hand, and that he was not looking in the direction in which he was going but was facing back toward the engine. In this connection, plaintiff and others testified that due to the curvature of the track, and the necessity of facing the engine for the purpose of relaying signals for the spotting and switching operations, plaintiff was unable to observe the danger of insufficient clearance between the truck and the track until it was too late to save himself from injury. Plaintiff admitted that at the time of the accident the train was going at slow rate of speed, between four and five miles per hour, and that he could have jumped off the car and prevented the injury had he known of his perilous position in time, but that he was not warned until it was too late.

Smith testified that as the train approached the truck, while it was stuck in the mud near the track, he did not realize there was not enough clearance for plaintiff to pass through unharmed, and that he did not warn plaintiff until the car was close to the truck. He admitted that he was familiar with the procedure necessary for pre-cooling freight cars, but testified that he was not an experienced railroad man, and assumed that plaintiff was watching where he was going. The evidence is uncontradicted, however, that up until the time of plaintiff's injury, Smith was standing to the rear of the truck, and did not attempt to flag the train or otherwise warn plaintiff of the approaching peril until it was too late to prevent his injury. Moreover, there is evidence that Smith was actually warned of the danger inherent in the situation even before the accident occurred, but that he chose to ignore the warning and do nothing about it.[1]

We are of opinion there is abundant evidence to support the finding of the jury that negligence of the defendant proximately caused the injury to plaintiff, and that plaintiff was guilty of no contributory negligence which would bar a recovery. It

---

1. In this connection, the witness Albritton testified:

"Q. What did you say? A. Well, when he backed up there and bogged, I asked him if he hadn't better flag the train, 'You are going to get your truck tore up.' He said: 'I guess they can see as big a thing as this truck.'

"Q. You said to him he had better go back and flag the train, if he didn't he would get his truck tore up? A. That's right, on the curve in the track, I said they can't see anything, you better go flag the train until you get your truck out."

"On cross-examination, the same witness further swore:

"Q. All you told him was, as I understand it, or is this correct or not, that here comes a freight car, and it might run into this truck, that's what you told him, wasn't it? A. That's right.

"Q. And that's all you said to him, wasn't it? Sir? A. No, I asked him if he hadn't better flag the train, I said 'You are liable to get your truck tore up, or get somebody hurt.' He said: 'I guess he can see a big thing as this truck'."

**514**

becomes manifest, from a careful consideration of the entire record evidence, that the danger here involved was not open and obvious to plaintiff, but that his injury proximately resulted from a perilous situation created by the defendant wthout the knowledge of plaintiff, and which, under the circumstances, plaintiff could not reasonably have foreseen. Here, the jury was warranted in concluding that, in the exercise of reasonable prudence and foresight, Smith should have anticipated the hazard created from the truck being stuck too close to the track would result in great danger or injury to plaintiff, and should have warned him in time for plaintiff to save himself from injury. Furthermore, under the evidence adduced as to Smith's disregard of the warning given, we believe the jury was justified in awarding punitive damages under the wanton count. Allison Coal & Transfer Co. v. Davis, 221 Ala. 334, 129 So. 9; Cf. Birmingham Electric Co. v. Turner, 241 Ala. 66, 1 So.2d 299; see also, Pure Oil Co. v. Cooper, 248 Ala. 58, 26 So. 2d 249; Louisville & N. R. Co. v. Duncan, 16 Ala.App. 520, 79 So. 513; Southern R. Co. v. Lime Cola Bottling Co., 210 Ala. 336, 98 So. 1.

■ We find no merit in the contention that appellant was engaged solely in interstate commerce, and not transacting or carrying on business within the State of Alabama at the time this suit arose so as to make it amenable to process by service upon the Secretary of State. See Code of Alabama, 1940, Title 7, Section 193. The leading Supreme Court cases of International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, and International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, clearly establish that this type of service in such cases does not unduly burden interstate commerce, but meets all the essential requirements of due process. See also, Bendix Home Appliances v. Radio Accessories Co., 8 Cir., 129

F.2d 177; Liquid Veneer Corp. v. Smuckler, 9 Cir., 90 F.2d 196; Rendleman v. Niagara Sprayer Co., D.C., 16 F.2d 122; 23 Amer. Juris., p. 500; 20 C.J.S., Corporations, § 1920, page 152.

■ The further contention that the venue of the action was improperly laid is without substance, and against the weight of authority. Jefferson County Savings Bank v. Carland, et al., 195 Ala. 279, 71 So. 126; Cf. St. Mary's Oil Engine Co. v. Jackson Ice and Fuel Company, 224 Ala. 152, 138 So. 834. Moreover, appellant had no such right of contribution or indemnity as against the third party defendant, the St. Louis and San Francisco Railroad, as required the trial court to try all the incongrous issues involved together in one suit. Under Rules 42(b) and 54(b), Federal Rules of Civil Procedure, 28 U.S.C.A., the ordering of a separate trial and judgment in this case was discretionary with the trial court, and its action in this regard is not here subject to review, no abuse of discretion being shown.

We find no reversible error in the record, and the judgment is accordingly affirmed.

### On Petition for Rehearing.

**PER CURIAM.**

In our opinion heretofore rendered in this cause we did not foreclose appellant on any right of contribution or indemnity it may desire to assert against the third party defendant, the St. Louis and San Francisco Railroad. We express no opinion whatever on the merits of that issue. We merely decided that whatever right of indemnity or contribution in the case, if any, which may exist in favor of appellant in a third party proceeding, such did not require the trial court under the rules to resolve that issue in the former suit.

With the opinion thus clarified, the petition for rehearing is hereby

Denied.